## Hummel & Co.'s Appeal.

1. A supplement to the charter of a mutual insurance company authorized them to insure for cash premiums, which were to be paid into the "common treasury;" afterwards the plaintiffs became members on the mutual plan; *Held*, that they were liable for assessments for losses on insurances on the cash plan.

2. A condition of insurance was, that when an assessment on the premium note remained unpaid for thirty days after demand, the policy should "be null and void until the assessment be paid," and the directors should retain the note to collect the sums assessed. *Held*, that non-payment of an assessment for thirty days did not absolutely extinguish the policy, but its protection was suspended until the assessment was paid by the assured or collected on the premium note.

3. A member is bound by an assessment made by the directors, unless he can show fraud or gross mistake.

4. Estimates for assessments for losses may properly be founded on knowledge of the company's risks where the losses have occurred, before the actual liabilities have been fully ascertained.

January 28th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Snyder county*. In Equity.    No. 280, of January Term 1874.

The bill in this case was filed August 22d 1873, by L. R. Hummel and others, trading as L. R. Hummel & Co., against the Lycoming Fire Insurance Co.

The object of the bill was to strike off a judgment against the plaintiffs, in which the defendants in the bill were plaintiffs; to set aside the execution issued on it; to reduce certain assessments made on the plaintiffs' premium note as insurers in the company, and for a statement of the affairs of the company.

The defendants were incorporated by virtue of an Act of Assembly of March 20th 1840. The act enacted that all persons who should insure with the company, should be members whilst they continued insured and no longer. Every person becoming a member should, before receiving his policy, deposit his promissory note for such sum as the directors should determine, a part of which note, not exceeding ten per cent., should be immediately paid, and the remainder be payable in part or the whole when the directors should deem it requisite for payment of losses by fire and expenses of the company, and at the expiration of the time of the insurance, the note, or so much as remained unpaid, should be given up to the maker; the company should have a lien in the nature of a judgment waiving inquisition on all the property insured to the amount of the deposit note, the prothonotary of the proper county to enter it on the judgment docket, to be in all respects as a judgment entered upon warrant of attorney and execution, might issue at any time for so much as might be due and demandable; when property insured should be alienated the policy

to be void, the policy to be surrendered, the insured to receive his deposit note, and satisfaction to be entered on the judgment, but the alienee might have the policy assigned to him with the consent of the directors within thirty days after the alienation. After ascertaining a loss by fire, the directors should determine the sums to be paid by each member as his proportion of the loss, which should be paid within thirty days after notice, &c. The act was to continue for twenty years, the legislature reserving the right to alter or modify its provisions. By a supplement passed July 26th 1842, the foregoing provisions as to judgment, &c., were re-enacted, and it was further provided that, before any execution should issue against a member, the officers should make out a statement of the amount of premiums received, the manner in which the moneys had been expended, and file a copy of the statement in the office of the prothonotary of the county where the member to be charged resides.

By another supplement, passed May 1st 1861, the company was authorized at their discretion to make insurances, for which cash premiums only should be received, and the sums thus received paid into the common treasury, and the company should be responsible for all losses to the property insured, but the insured should not be members of the company.

On the 28th of April 1869, L. R. Hummel, C. Hower and D. W. Dundaugh, trading as L. R. Hummel & Co., made application to the defendants for insurance to the amount of $10,000, on a planing mill, &c., in Selinsgrove; they gave a premium note for $8000, and paid $400 in cash on it. On the 3d of May 1869, the defendants issued the policy to plaintiffs in accordance with his application: the policy was subject to by-laws, conditions, &c., of the act of incorporation.

The 10th condition was: "Whenever an assessment shall have been made upon the premium notes, and the same is not paid within thirty days after having been demanded by the company, through their agents or receivers, the policy of insurance given upon such notes, shall be null and void, until the said assessment be paid, and the directors shall retain such premium-notes and collect thereon such sum or sums so assessed."

On the 1st of May 1869 and before the policy was issued, the defendants levied an assessment, No. 26, on their premium-note for $240, and on the 1st of May 1870 another assessment, No. 27, for $320 ; in the fall of 1870, Dundaugh sold his interest in the firm to J. H. Fisher, who was accepted as a member of the firm, which continued under the same name. On the 17th of February 1871, the original firm, with the consent of the company, transferred the policy of insurance to the new firm (the plaintiffs), who gave their premium-note for $8000, instead of the one first given. About May 1st 1871, another assessment of $400, No. 28, was levied on

28 P. F. SMITH—21

the new note, these assessments were paid within thirty days respectively ; about October 10th 1871, another assessment, No. 29, for $1000 was levied ; another, No. 30, for $400, about May 1st 1872, and another, No. 31, for $400; about May 1st 1873. The defendants insured property in the state of Illinois and other states than Pennsylvania at stock rates and on the mutual plan, and also on stock rates in Pennsylvania, without the knowledge and consent of the plaintiffs ; the plaintiffs refused to pay the last three assessments. On the 3d of April 1872, after the refusal of the plaintiffs to pay assessment No. 29, the defendants entered judgment in the Common Pleas of Snyder county on the premium-note for $6880, and filed a statement in accordance with requisitions of the Act of Assembly. The statement showed the operations of the company from June 10th 1870 to June 10th 1871, at which last date the amount of assets over liabilities appeared to be $266,667.82 ; and the operations of the company from June 10th to October 10th 1871, at which last date the excess of assets over liabilities appeared to be $84,158.88. They filed also an "estimated statement;" in this, amongst the liabilities, was that of loss by the Chicago fire $450,000, and amongst the assets the above stated actual balance of $84,158.88, and the amount anticipated from assessment No. 29 ; showing the estimated amount of assets over liabilities to be $138,261.54.

On the 17th of September 1871, about eight months before assessment No. 31 was made, Fisher sold his interest in the firm to Jeremiah Bogar and Isaac Albert.

To September Term 1873 of the Court of Common Pleas of Snyder county, the defendants issued execution on their judgment on the premium-note and instructed the sheriff to collect assessment No. 29 for $1000, and No. 30 for $400.

The bill set out the foregoing facts ; it further set out that the defendants were endeavoring to collect assessments No. 29 and No. 30, for the purpose of paying losses incurred by fire in Illinois and other states than Pennsylvania, and also from losses in Pennsylvania on insurance made at stock-rates ; and the plaintiffs averred that, according to condition No. 10, assessment No. 30 could not be collected. They averred that the defendants refused to allow them credit for $400 paid at the time of the application and assessment No. 26 for $240. That assessment No. 29 was excessive, the defendant having at the time more assets than were necessary to meet the losses, &c., and assessments Nos. 29, 30 and 31 were made on estimated losses, contrary to the charter. The defendants amongst other things answered, admitting the insurance of property outside of Pennsylvania, both on the stocks and mutual plan, and that assessments Nos. 29 and 30 were levied for the payment of losses under such insurances, and that the proceedings were under Act of May 1st 1861, which was part of their

charter; they denied that at the time of the assessments they were in possession of the funds to meet demands against them; the liabilities over the assets—including $450,000 for the losses by the Chicago fire—was $524,693.80 ; the assessments were on actual losses already accrued and monthly losses accruing.

The plaintiffs replied, amongst other things, that the supplements of 1842 and 1861 had not been accepted by the members, and were, therefore, not binding.

An examiner was appointed, who reported the testimony; the court, without referring the case to a master, decreed as follows :

" And now, December 20th, 1873, it appears to the court that the respondents are not now claiming assessment No. 31, the court dismiss the bill of complainants and order them to pay the cost of this proceeding."

The plaintiffs appealed to the Supreme Court, and in a number of specifications assigned the decree for error.

The Supreme Court referred the case to W. J. Greenough as master.

He reported :—

1. That the defendants were bound by the supplements of 1842 and 1861, and could levy assessments to pay losses at stock-rates as well as those on the mutual plan.

2, 3. That the policy became void under the tenth condition, by reason of defendants' refusal to pay assessment No. 29, and they were therefore not liable to assessment Nos. 30 and 31, and that in consequence of the alienation by Fisher to Bogar and Albert, the plaintiffs were not liable for assessment No. 31.

4. That the directors, under the facts in the case, were authorized by their charter to make assessment No. 29.

5. He reported a somewhat minute calculation of the assets and liabilities, and found that the losses by the Chicago fire were not so great as the defendants had estimated them.

6. That the defendants had the right to enter judgment on the premium-note of plaintiffs and issue execution for the sums " due and demandable."

7. That the statement filed contained inaccuracies, and was, therefore, not such an one as the Act of Assembly required, and would not support the execution issued, but the defendants had the right to issue execution for the amount actually due, as ascertained by the calculation made by him.

He therefore recommended a decree that the defendants be restrained from collecting assessments Nos. 30 and 31, and also assessment No. 29, except $515.66, which sum, with interest, they be allowed to collect by the execution, &c.

The defendants excepted to those parts of the report in which the master decided against them. They stated with their excep-

tions that they had not issued an execution to collect assessment No. 31, and did not intend to do so.

*C. Hower* and *G. F. Miller*, for appellants (plaintiffs in the bill).

*J. A. Hazen* and *B. W. Cummings* (with whom was *S. Alleman*), for appellees.

Judgment was entered in the Supreme Court, February 8th 1875,

PER CURIAM.—The prayers of this bill are to set aside the fi. fa., and strike off the judgment at law of the insurance company against the plaintiffs, or to reduce the assessments Nos. 29 and 30, and prohibit the collection of No. 31. There is a prayer also for a statement of the affairs of the company.

The master has found against the plaintiffs on all questions affecting the validity of the judgment. He finds the right of the company to assess the premium-notes under mutual policies with the losses on policies issued for cash-notes; that the charter has been substantially followed in making the assessments; that the Act of 1861 is binding on the plaintiffs, who became members long after its passage and acceptance by the company. And he finds that the company had substantially complied with the requisites of the law in the entry of the judgment. These are in short the results of the master's findings, and sustain the defendants in entering judgment and issuing execution. He erred, we think, in one finding, which would affect the sum to be collected, to wit: that the policy was null and void under the 10th sect. of the rules appended to the policy, in consequence of the non-payment of the assessment No. 29, for a period of thirty days. The effect of the 10th section is merely to suspend the benefit of the policy, after thirty days' default in payment, until payment of the assessment is made either voluntarily or involuntarily, the company by the same section being authorized to retain the premium-note to enforce collection. The mistake of the master is in treating the words "null and void" as creating an absolute extinguishment of the contract; whereas, the provision is only a contract mode of enforcing payment of the premium, by withholding the protection of the policy during the default, the contract itself remaining in life and its operation only being suspended by its own terms, until payment is made by the insured, or the assessment collected under the premium-note. The moment payment was made the contract which was still alive became again operative in its protection. There was no option to be exercised by the company in order to put an end to the contract, but the contract *propria vigore*, suspended the protection until the default was at an end. Clearly it is the right of the parties to make this condi-

[Hummel & Co.'s Appeal.]

tion in their contract and especially in such a case where by the policy the relation of membership is created.

We think the master erred also in deciding that the assessment was partially invalid because of excessiveness. By the terms of the charter and of the premium-note the assured, as a member of the corporation, submits himself to the acts of the directors, as the common representatives of all the members. He and they are all bound by the assessments made by them, unless he can show fraud or gross mistake. This is a rule he has no right to complain of. He became a member on the very condition of submitting to be thus assessed for losses. The presumption is that the directors, representing all the members, made the assessment properly. The bill avers neither fraud nor gross mistake. Its only averment is that the assessments were illegal and contrary to the charter. The answer of the company avers the legality and propriety of the assessments, and denies that they were incorrect or excessive. The master, in his finding on this point, does not find fraud or plain mistake, but by a difficult and uncertain process of reasoning, founded on vague and unsatisfactory statistics of the company, and by inferences in themselves uncertain, reaches a conclusion that the assessments were excessive. But at the same time the fact clearly appears that by the great conflagration which reduced about one-fourth of the city of Chicago to ashes, the company suffered immense losses, and that necessarily the company had to make estimates founded on the knowledge of its risks in that city, in order to meet its liabilities; and that this must be done before the liabilities could be fully ascertained. In the presence of such a necessity and in the absence of all charge and evidence of fraud or collusion among the directors, or gross mistake in the performance of their duty, it would be improper to treat the rightful act, in making the assessment on all its members alike, as invalid and as justifying the restraint of their right to due execution for the collection of the money necessary to meet their losses. Had the immense loss by the Chicago fire not occurred, it is not probable we should have heard of this case. Upon the whole case, we discover no good ground to enjoin the execution or set aside the judgment. No claim for assessment No. 31 is made, and therefore it is out of the question.

The decree of the court below dismissing the bill is affirmed, with costs to be paid by the appellants, and the appeal dismissed.