# Washington Mutual Fire Insurance Co. *versus* Rosenberger, Light & Co.

1. Where a member of a mutual insurance company was in default for the non-payment of an assessment, he cannot demand payment of a loss which occurred during such default.

2. The neglect to pay an assessment has the effect of suspending the protection of the policy until the default is removed; upon payment of the assessment and acceptance by the company before loss, the policy revives in full vigor.

3. Although a company may show indulgence to its members and be in the habit of receiving assessments after they are due, such conduct furnishes no excuse for non-payment, and is entirely consistent with the fact that while the default of a member continues, the protection of his policy is suspended.

May 23d 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Lebanon county:* Of May Term 1877, No. 165.

Debt by Rosenberger, Light & Co. against the Washington Mutual Fire Insurance Company upon a policy, dated April 4th 1868, insuring in the sum of $5200 the foundry, outshops and machinery of the plaintiffs.

At the trial, before Henderson, A. L. J., the plaintiffs gave in evidence the application and policy and proceeded to prove the loss, the demand for the insurance money and the refusal of the company

[Washington Mut. Fire Ins. Co. *v.* Rosenberger.]

to ·pay the same. This refusal the company averred was on the ground that an assessment had been laid upon the policy which was unpaid at the time the property was burned and still remained unpaid, and the plaintiffs having admitted these facts the defendant asked for a nonsuit which the court refused.

On behalf of the defence the following facts were then disclosed :—

The defendant company was incorporated by Act of Assembly April 2d 1868, Pamph. L. 769.

The fourth section of the act provides that all persons insured shall be members in accordance with its by-laws during the period for which they shall remain insured and no longer.

The tenth by-law was :—

" All assessments must be paid within sixty days after the occurrence of a fire. In case of refusal, or neglect to pay an assessment after the time specified, the person so refusing or neglecting, shall forfeit his policy and immediately cease being a member of this company. Provided, nevertheless, the said assessment on such defaulting member may be recovered by suit."

The application contained this clause: " For value received * * * I promise to pay the said company such sum or sums of money, and at such time or times as the board of managers * * * may, for the purpose of paying losses by fire, &c., of said company, require—payable sixty days after notice and demand."

And also the following : " It is agreed, if the company so elect, that by returning the application of insurance, after giving due notice of the intention so to do, the insurance shall henceforth cease."

An assessment known as " No. 5," was made and notice thereof as follows sent to plaintiffs which they admitted was received.

" Lebanon, Pa., August 1st 1871.

Mr. ————. You are hereby notified that the Board of Managers of the company, has by resolution laid assessment No. 5, and that the amount assessed in your insurance in this company is $——, which you are requested to pay to J. H. Miller, appointed receiver on ——, the —— day of September 1871, at the public house of ——————, in ————, Lebanon county, Pa., between the hours of — and — o'clock.

" On all assessments not paid before the 1st of November next ten per cent. will be added and the insurance suspended until payment thereof is made.

          Signed        JACOB WEIDLE, President.
J. H. MILLER, Secretary."

The latter paragraph of this notice, it appeared was inserted by the secretary of the company without any authority from the company. This seemed to have been the only notice given to the plaintiffs.

The property of the plaintiffs was burned on the 27th of January

1872, and a day or two thereafter the plaintiffs offered to pay the assessment, which was refused by the secretary of the company on the ground that the policy was "forfeited or suspended."

Plaintiffs then alleged a waiver of the condition contained in by law No. 10, and offered to show that the company in its transactions with plaintiffs and other members previous to this fire treated said by law as a dead letter; that it was never enforced and prompt payments of assessments were never insisted upon; that the plaintiffs called within a day or two after the fire and offered to pay assessment No. 5, which was refused; that the minutes of the company in evidence showed that it was the custom of the company to receive assessments from members after the time designated for their payment, as was seen by the fact that a penalty was fixed to pay for the collection of the same and that extensions had been granted for the payment of said assessments; that by an extract it would appear that on the 6th of January 1872, a collector was appointed to collect outstanding assessments, who was to collect ten per cent. from those in arrears for his services and who was to notify any members who refused to pay that their policies would be cancelled after the 15th of February following, and the outstanding assessments collected by law, and that at the time of the passage of this resolution of the 6th of January a number of members had not paid assessment No. 5, and that they afterwards came in and paid it and their policies continued and forfeiture was waived.

The evidence under these offers was, in the main, admitted under objection, and exceptions were taken thereto.

It was not shown that the notice required by the resolution of the 6th of January was given to plaintiffs.

The plaintiffs presented a number of points, which in effect embraced these propositions : that the notices, resolutions and general conduct of the company towards those who neglected to pay assessments, showed that the company was not in the habit of enforcing the tenth by law, and that it was practically a dead letter; and secondly, that the failure of the company to declare the forfeiture of the plaintiff's policy, as well as those of other delinquents, taken in connection with the notices and other acts of the company, misled the plaintiffs and induced them to believe that the prompt payment of assessments was not required, and that they were thereby lulled into a false security, and that the company was consequently estopped from setting up the tenth by law as a bar to plaintiff's recovery.

The points of defendant, in substance, were: that the contract of insurance between plaintiffs and defendant was one of mutuality, and aside from the tenth by law, required the plaintiffs to pay, within the time specified, a lawful assessment for the loss of a co-member, as a condition precedent to recovery; that upon a neglect to pay an assessment when due, the relations of the parties are severed

at the time of the loss ; that the assured were all members of the company, and acquainted with the mutual rights and liabilities under the charter and by laws, and that no act of the officers of the company could therefore mislead them ; and that in a mutual company the members are the agents of each other, and waiver cannot be predicated, and there was therefore no evidence to excuse the default of the plaintiffs.

The court gave specific answers to these points of plaintiffs and defendant, the substance of which is contained in the following portion of the general charge :—

" Has this law, this tenth section of the by laws, become a dead letter by reason of its non-enforcement ? It is true there is no evidence that it was ever repealed or rescinded; but it does appear from the minutes, by the resolution and action of the board, both prior and subsequent to the plaintiffs becoming members, that it has not been enforced. And this is confirmed by the testimony of the secretary, who declares the fact that it was almost, if not altogether, the uniform practice of the company to ignore the existence of this article of the by laws.

" The action of the company must be uniform and just to all of its members. Besides this the article in question is in direct conflict with the terms of the contract of insurance. The contract was that they would come in, and must pay within sixty days after notice and demand. That is the measure of the rights and duties of the insured in the company. Now, while we are of the opinion that the company has the power to make by laws for the regulation of its affairs and the government of its members, and prescribe a course of forfeiture, yet we say to you that this 10th article of the by laws is not operative on this policy of insurance; that the contract of insurance contains terms substantially different, and is the measure of the rights, duties and responsibilities of the parties to it, and that the article does not stand in the way of plaintiffs' recovery in this action.

" We instruct you that the plaintiff cannot recover the amount of his loss unless he has complied with his part of this agreement or excused his want of performance. In other words, he cannot enforce the performance of the contract in the policy and at the same time neglect or refuse to pay its consideration.

" Was there anything in the conduct of the Washington Mutual Fire Insurance Company, on the part of the company, was there anything done or spoken by its officers, or those having authority to speak for the company, that misled this plaintiff into the danger which threatened him at the time ? If there was, search the evidence closely, and you must be satisfied of that fact before you can find for the plaintiff. Was there anything shown that satisfied you that the plaintiffs were lulled into security, or misled to their injury by the defendants, so as to induce them to delay payment

[Washington Mut. Fire Ins. Co. v. Rosenberger.]

and rely upon an extension of time ? If you are satisfied from the evidence that the plaintiffs were thus misled, your verdict must be in their favor; otherwise, if you come to the conclusion that plaintiffs neglected to pay their assessment, were in default through their own negligence, the tender after the fire was too late, and you should find for defendants.

"They could not be misled by anything that occurred after the fire, and nothing could affect it at the time except an agreement on the part of the company. You must look to the evidence prior to that; was there anything done on the part of the company within the knowledge of the plaintiffs that induced them to rely on the action of the company; that misled them into the belief that it was not necessary to pay their assessment as they had stipulated in the terms of insurance ?

"The whole question, we think, turns upon this clause of the policy or contract of insurance. The section of the by laws has nothing at all to do with this case. So that you must take the contract or agreement on the part of the plaintiffs to pay their assessments within sixty days after notice and demand as the measure of their duties, and unless they were excused from the payment by the action of the company they cannot recover on this policy."

The verdict was for the plaintiffs for $6641.25.

After judgment the defendant took this writ, its assignments of error numbering twenty-three, among which were a number to the admission of the foregoing evidence, the answers to the points and the portions of the charge quoted.

*C. P. Miller, A. R. Boughter* and *William M. Derr*, for plaintiff in error.—A mutual insurance company having in view the especial benefit of its members, depends entirely upon reciprocation, for mutuality is its very foundation. One who refuses to pay his assessment while in default is not a member, and his refusal to contribute absolves other members from liability to him. Delinquency works a suspension or forfeiture of the right to compensation for a loss during such delinquency and they cannot be waived by the company.

*Josiah Funck*, for defendants in error.

Mr. Justice STERRETT delivered the opinion of the court, October 1st 1877.

In consideration of the policy of insurance issued to the plaintiffs below, they promised to pay, within sixty days after notice, on demand, such assessments as might be required to pay losses by fire and expenses. In April 1871 an assessment, known as No. 5, was duly made and notice thereof given to them, but they neglected to

pay it. The property covered by the policy was destroyed on the 27th January 1872, and two days thereafter an offer was made to pay the assessment, which was declined by the company, on the ground that it had not been paid within the required time, and, in consequence thereof, the policy was not in force when the property was destroyed. The jury was instructed that the plaintiffs could not recover unless the failure to perform their part of the contract was excused by the action of the company. In concluding his charge, the learned judge says : " The only question is, whether or not there was a misleading of the plaintiffs by the conduct and actions of the defendant company, as evidenced by their resolutions, their notices, and by their general practices, as proved by their minutes and the evidence of the secretary. If you find that the plaintiffs were misled to their injury, it excuses them, and they would be entitled to recover. Otherwise the verdict should be for the defendant."

Several of the numerous assignments of error relate to the admission of testimony, introduced for the purpose of showing that the insured were excused in the non-payment of the assessment, and others relate to the sufficiency or legal effect of the evidence ; and it is claimed that there was error in refusing to instruct the jury that there was no sufficient evidence to excuse the non-payment. It is unnecessary to consider the assignments in detail. If the evidence was insufficient, the jury should have been so instructed, in accordance with the points to that effect submitted by the counsel to the company.

The consideration for the insurance was that the defendants in error would pay, within the time stipulated, their share of the losses sustained by their fellow members. The mutuality of the contract required them to perform their part before they could demand performance by the company. While they were in default in the payment of their assessments they had no standing to demand payment of their own loss. This principle lies at the very bottom of the relation existing between such associations and their individual members. By the express terms of the contract the company had the right to cancel the policy, and thus terminate the contract relation, upon giving notice to the insured ; but it is not claimed that this was done. Without any action on the part of the company, however, the neglect to pay the assessment had the effect of suspending the protection of the policy until the default was removed. Upon the payment of the assessment the policy would have revived in its full vigor ; but it was never paid or even tendered until after the fire; and as delinquent policy holders they had no right to maintain the action without showing that the default was either waived or excused by the company. There is no evidence of waiver, nor do we think there is any evidence to excuse the default. There was considerable testimony showing that great indulgence was extended to delinquent

[Washington Mut. Fire Ins. Co. *v.* Rosenberger.]

members, and that the company was accustomed to receive assessments long after they were due ; but this is entirely consistent with the fact that while the default continued the protection of the policy was suspended. It is claimed that the action of the company in issuing notices and informing members that a penalty would be exacted if assessments were not paid by a certain time, was calculated to mislead and induce them to believe that by submitting to the penalty they might pay when it suited their convenience, and in the meantime their policies would continue in full force. This is a mistaken view of the subject. Whether the company had authority to impose penalties or not, the notices could furnish no excuse for non-payment. They contained no intimation of any change or modification of the contract. On the contrary, they were calculated to remind members of the necessity of payment, and warn delinquents of their default. The resolution of January 1872, appointing a collector and directing notice to be given that the policies of all who neglected to pay would be cancelled after the 15th February following, &c., could not possibly mislead any one. Assessment No. 5 was then long past due, and as a consequence of the default the protection of the policy was then suspended. The resolution was designed to give notice, that unless the default was removed by the date mentioned the policy would be cancelled. Instead of extending indulgence, this was urging payment. But the resolution never went into effect ; and inasmuch as the insured had no notice of it, they could not be prejudiced, even if it had been calculated to mislead. If there had been any testimony to show that the company had ever recognised its liability, or paid losses that occurred while the assessments were over-due and the protection of the policy suspended in consequence thereof, there might be some reason for claiming that such action on the part of the company was calculated to mislead members who were cognizant of the fact; but nothing of the kind was shown. While it is evident that the company was indulgent, it is equally clear that they endeavored to collect over-due assessments in a manner that was not calculated to waive any of their rights, or mislead any of the members to their injury. We see nothing in the testimony to excuse the default of the defendants in error in not paying the assessment according to the terms of their contract, or to justify the court in submitting the question to the jury.

Judgment reversed and a *venire facias de novo* awarded.