## Crawford County Mutual Insurance Company *versus* Cochran et ux.

1. Although a condition be attached to a policy in a mutual insurance company, declaring it void on a failure to pay an assessment on a premium-note within a specified time, yet the policy does not thereby become *ipso facto* void. The company may waive the right of avoidance and then the contract relation is not wholly dissolved; but the protection of the policy is suspended until the default of non-payment is removed. No recovery can, therefore, be had for a loss sustained during the continuance of such default.

2. By levying a second assessment, during a default in the payment of a former one, such a company does not waive its right to demand the latter, nor does it thereby remove the disabling consequences flowing from the neglect to pay said assessment.

3. Whether a company, by the language and acts of its secretary, has waived formal proofs of a loss, is a question for the jury.

4. Where the powers of the agent of such a company are limited, with no authority to collect assessments, the fact that the policy was procured by him created no legal presumption that he was authorized to receive assessments subsequently made. And even if said agent was authorized to receive assessments in money, a payment in work, done for the personal benefit of said agent, would not be payment to the company.

November 27th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1878, No. 123.

Covenant by John Cochran and his wife, in right of said wife, against the Crawford County Mutual Insurance Company, upon a policy of insurance issued by the defendant company.

Cochran and wife took a policy in the defendant company in November 1871, in the sum of $300, for five years, and gave their premium-note for $18 therefor. In March 1873 an assessment was made by the company on all premium-notes, and a notice was sent plaintiffs that their assessment was ninety cents. This notice was dated April 1st 1873, and required payment thereof within thirty days, in accordance with the thirteenth condition of the policy, as follows: "That the policy shall be null and void if any assessment shall not be paid within thirty days after notice to the assured." The notice also contained this direction: "Remit by draft or post-office order and receipts will be returned, or pay at the office of the company." About April 1st 1874, the assured received a notice of another assessment levied on the 12th of March preceding. The property insured was destroyed by fire on April 12th 1874.

The policy was obtained from one Bemis, an agent, who was authorized "to take insurance; receive fees for the same; collect six per cent. of the premium-note at the time it is given and receipt therefor." The tenth condition of the policy was as follows: "That the assured shall forthwith give formal notice in writing to the company of the loss sustained."

[Crawford County Mutual Ins. Co. *v.* Cochran.]

At the trial, before Church, P. J., Cochran testified that a few days after the fire he went to the office of the company and told Mr. Adams, the secretary of the company, that he wanted to get the money for his loss, and Adams replied that he could not and would not do anything for him, and did not want him to bother him. That witness subsequently, on the same day, went back, accompanied by Mr. Hampson, and tendered the money for whatever was due on the policy, and that Adams would not take it; that he showed Adams the 1874 notice, and offered to pay whatever the claim of the company was; that witness had received notice of assessment dated April 1st 1873, while working in the employ of the agent Bemis, and that he gave it to Bemis and asked him if he would fix it, who said he would, and that witness left it with him for that purpose; that witness was doing work for Bemis, and the understanding was that the ninety cents were to be deducted in the settlement and Bemis was to pay the assessment therewith; witness did not know whether Bemis had done so or not.

Hampson, who accompanied Cochran to see Adams, testified that the latter got angry, and would not talk about the matter; said there was no use coming; that he would not look at the money; would not look at the assessment; that the policy was forfeited and the company would not pay it, and there was no use bothering about it. These witnesses were both contradicted by Adams and Bemis for the defence.

The defendant submitted the following points, which the court refused:

1. There is no evidence to submit to the jury that the plaintiff ever gave the notice of the loss or made the proofs of the loss as required by the tenth condition of the policy, nor that the defendant has waived said condition, and therefore the plaintiff cannot recover, and the verdict must be for the defendant.

2. There is no evidence to submit to the jury that the plaintiff ever paid the assessment of 1873, nor that the defendant has waived the forfeiture resulting from its non-payment, and therefore the plaintiff cannot recover, and the verdict must be for the defendant.

In the general charge, the court, in substance, said that the facts as testified to by Cochran constituted a waiver of the condition of the policy requiring proofs of loss, and further charged as follows:

"It is claimed that the policy was forfeited by reason of the non-payment of the 1873 assessment. That might be waived by the insurance company. You will note the facts in evidence, whether it was paid or whether it was waived. * * *

"We understand insurance companies must act by their officers and agents. And so far as Cochran was aware he had a right to believe he had a policy in this company in full life, because in April 1874, the company, acting through Adams, the only one they could act through in their ordinary routine of business, sent him

[Crawford County Mutual Ins. Co. *v.* Cochran.]

notice of assessment. It is some evidence that Cochran, this insured, had a right to suppose his policy had not been forfeited by the company. It gave thirty days in which that 1874 assessment might have been paid. The loss at that time would not excuse the company from receiving that assessment, nor would it excuse them from paying the loss. Hence we say these points defendant asks us to charge you on we deny. We refuse to take the case away from the jury. We submit it upon these two matters. You will take notice you will not find a verdict against the evidence. Take into consideration this 1873 assessment. If Cochran, at this interview in the summer of 1873, simply told Bemis to go and pay this ninety cents to the insurance company—in other words, made him his agent of transfer to pay this money to the insurance company— that is not a good payment, and Cochran must suffer for submitting his business to Mr. Bemis. But if Cochran paid Bemis anything, even paid by work, as I understand this payment of ninety cents, if Bemis was the agent of the company, well known, Cochran having got this policy from him, we say that was a good payment, and the waiver, if you believe that, does not enter into the case."

The verdict was for plaintiffs, whereupon defendants took this writ, and assigned for error the refusal of the above points, which constituted the first and second assignments and the portions of the charge noted, which were the third and fourth assignments of error.

*A. S. Davis* and *J. W. Smith*, for plaintiff in error.—The proof of loss was a condition precedent and necessary to a recovery: Inland Ins. Co. *v.* Stauffer, 9 Casey 397 ; West Branch Ins. Co. *v.* Helfenstein, 4 Wright 289 ; Bradley *v.* Lycoming Ins. Co., 16 P. F. Smith 9 ; Desilver *v.* State Ins. Co., 2 Wright 130. Estoppel is the true ground of waiver: Diehl *v.* Adams County Mutual Ins. Co., 8 P. F. Smith 444 ; Insurance Co. *v.* Slockbower, 2 Casey 199. Adams had no authority to waive a condition of the policy: Mentz *v.* Lancaster Fire Insurance Co., 29 P. F. Smith 475 ; Mitchell *v.* Lycoming Insurance Co., 1 Id. 402 ; Brewer *v.* Chelsea Mutual Fire Insurance Co., 14 Gray 203. There was no evidence to go to the jury that the company had waived the forfeiture resulting from the non-payment of the assessment. The court seemed to think the sending the notice of the second assessment was such waiver. The evidence was that it was sent by mistake, and this clearly could not be interpreted as a waiver: Diehl *v.* Adams County Mutual Ins. Co., *supra*. Nor did the transaction with Bemis bind the company. He had no authority to make any arrangement on behalf of the company: Hackney *v.* Allegheny Mutual Ins. Co., 4 Barr 185; Mitchell *v.* Lycoming Mutual Ins. Co., *supra ;* Susquehanna Ins. Co. *v.* Perrine, 7 W. & S. 351 ; Columbia Ins. Co. *v.* Buckley, 2 Norris 293; Hummel & Co.'s Appeal, 28 P. F. Smith 320 ; Washington Mutual Fire Ins. Co. *v.* Rosenberger, 3 Norris 373.

[Crawford County Mutual Ins. Co. v. Cochran.]

*H. J. Humes* and *D. C. McCoy & Son*, for defendant in error.— Conditions, being for the benefit of the company, may be waived by the acts of its officers and agents, and where there is evidence of such acts, from which the jury may infer the waiver, it is for the jury and not for the court : Coursin *v.* The Penn. Ins. Co., 10 Wright 323 ; Farmers' Ins. Co. *v.* Taylor, 23 P. F. Smith 342 ; Inland Ins. Co. *v.* Stauffer, *supra ;* Commonwealth Ins. Co. *v.* Sennett, 5 Wright 161. The company having denied its liability, it was not necessary to make formal proofs of loss : Ætna Ins. Co. *v.* Tyler, 16 Wend. 401 ; Heath et al. *v.* Franklin Ins. Co., 1 Cush. 257 ; Clark *v.* New England Mutual Fire Ins. Co., 6 Id. 342 ; Underhill *v.* Agawam Mutual Fire Ins. Co., Id. 440 ; Taylor *v.* Merchants' Fire Ins. Co., 9 How. 390.

Bemis was in the habit of receiving assessments from policy-holders and paying them to the company and returning receipts. Such custom binds the company : Girard Life Ins. Co., Administrators of Megarge, *v.* Mutual Life Ins. Co. of New York, 5 W. N. C. 173 ; Lycoming Mutual Fire Ins. Co. *v.* Bedford, 2 Id. 529.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1879.

The evidence of a waiver of specific proof of loss was sufficient to submit to the jury. Within two or three days after the fire, the defendant in error went to the office of the company, and informed the secretary of the loss, and offered to pay some previous assessment. The evidence is conflicting as to whether it was to pay both the previous assessments, or the earlier one only. The secretary refused to accept the sum offered. Hampson, a witness on the part of the defendant in error, testified that the secretary " said the policy had been forfeited ; there was no use in coming there ; would not look at the money ; would not look at the assessment ; said the policy was forfeited, and the company would not pay it, and there was no use bothering anything about it." This interview was at the office of the company and with its principal officer. If this evidence is believed, there was a distinct declaration that the company would not pay the loss, by reason of the forfeiture of the policy. It was fairly within the province of the jury to say whether the declaration, " there was no use bothering anything about it," did not reasonably import that it was useless to make any proofs of loss. The company already had notice of the fire, the only remaining act was to make the formal proofs. A jury might well find that both parties understood the language used referred to proofs of loss. If the objection to pay was then put solely on the ground of forfeiture, and the defendant in error induced to make no formal proofs of loss, the company could not, afterwards, successfully plead the absence of such proof. The first and third assignments cover no error : Inland Ins. & Dep. Co. *v.* Stauffer, 9 Casey 397 ; Commonwealth Ins. Co. *v.*

Sennett, 5 Wright 161; Coursin v. Pennsylvania Ins. Co., 10 Id. 323; Buckley v. Garrett, 11 Id. 204; Farmers' Ins. Co. v. Taylor, 23 P. F. Smith 343; State Ins. Co. of Missouri v. Todd, 2 Norris 272.

The policy was made and accepted, subject to the terms and conditions of the by-laws. The thirteenth declared " whenever an assessment shall have been made upon a premium-note, and the same is not paid within thirty days after notice * * * the policy of insurance given upon such note shall be null and void, and the directors shall retain such premium-notes, and collect thereon such sum or sums so assessed." It is well settled that although a condition be attached to a policy declaring it void, on a failure to pay an assessment on a premium-note within a specified time, yet the policy does not thereby become, *ipso facto*, void. The company may waive the right of avoidance, and then the contract relation is not wholly dissolved; but the protection of the policy is suspended until the default of non-payment is removed. No recovery can, therefore, be had for a loss sustained during the continuance of such default: Hummel & Co.'s Appeal, 28 P. F. Smith 320; Columbia Ins. Co. v. Buckley, 2 Norris 293; Washington Mutual Fire Ins. Co. v. Rosenberger, 3 Id. 373.

By levying the assessment of 1st April 1874, the company did not waive its right to demand payment of the assessment made the year before; nor did it thereby remove the disabling consequences flowing from the neglect to pay that assessment. As long as the assessment remained unpaid beyond thirty days after duly demanded, so long the protection of the policy continued suspended. The assessment of April 1873 was demanded soon after it was made. An acceptance of its payment at any time before the fire would have restored the former efficacy of the policy. If the holder thereof was in default when the loss was sustained, the company was not bound to afterwards accept payment of the assessment. There was, therefore, no evidence that the company, before the fire, waived any right which it had acquired by reason of default in the payment of the assessment made in April 1873.

The remaining question is, was the assessment paid before the fire occurred? It appears by the evidence that in June 1873, one Keiling was at work on a house for Bemis. Part of the time the defendant in error worked there for Keiling, and afterwards for Bemis. Bemis was authorized to act as agent for the company "in taking insurance in said company; receiving fees for the same; collecting six per cent. of the premium-note at the time it is given, and receipt therefor."

The learned judge charged the jury substantially, that if it was agreed between Bemis and Cochran that the former should retain out of the wages of the latter the amount of the assessment, it was a good payment, if Bemis was agent for the company, he having

[Crawford County Mutual Ins. Co. *v.* Cochran.]

procured the policy for Cochran. In this there was error. As already shown, Bemis was an agent with limited powers, having no authority to collect assessments even in money. It does not appear that he ever assumed or exercised any such power. The fact that the policy was procured by him created no legal presumption that he was authorized to receive assessments subsequently made. The notice given of the assessment directed that the money be remitted by draft or post-office order, or paid at the office of the company. This gave no color of excuse to pay to an unauthorized agent. Cochran did no work for the company. It is not pretended that Bemis had any specific authority from the company to receive the payment in that manner. He did not account for it to the company in any manner. There was no ratification of his agreement. The company never received the money, and there was no offer of payment until after the fire. If Bemis had been authorized to receive payment of assessments in money, an attempted payment in labor to Bemis personally would have been no payment to the company. One partner cannot discharge a debt due to the firm of which he is a member, in consideration of work rendered for his individual benefit. Equally as great mischief, and more confusion, would result from holding that a debtor to an insurance company may pay an assessment levied to pay losses, by an individual trade, exchange or barter with an agent. It cannot be done. The second point of the plaintiff in error should have been affirmed, and the second and fourth assignments are sustained.

Judgment reversed.