## Knouse *v.* Mutual Fire Insurance Co. of Millville, Appellant.

*Fire insurance—Mutual companies—Assessments—Future losses and expenses—Failure to pay.*

The rights and remedies of the members of mutual fire insurance companies are to be determined by their contract. One who, by his contract, has made himself "subject to assessment at such times as the board of directors may, by the act of incorporation, require" and "liable for all losses and expenses," during membership to the amount of the premium paid, cannot avoid payment of an assessment, otherwise proper, because it made provision for future losses and expenses. If a member withdraw, or if his membership expire, at a time when, pursuant to an assessment, he has contributed more than sufficient to pay his share of losses and expenses then sustained, he is entitled to a return of the unearned part of the assessment.

A member who withholds payment of such an assessment from February until April cannot recover against the company for a loss incurred while the assessment remained unpaid, where his policy expressly provided that it should be null and void if any assessment was not paid within thirty days.

Rosenberger, Light & Co. v. Washington Mutual Fire Insurance Co., 87 Pa. 207, distinguished.

Argued March 6, 1922. Appeal, No. 39, March T., 1922, by defendant, from judgment of C. P. Columbia

County, Feb. T., 1916, No. 57, in favor of plaintiff on case stated, in suit of S. L. Knouse v. The Mutual Fire Insurance Company of Millville. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, and LINN, JJ. Reversed.

Case stated in assumpsit to recover on a policy of fire insurance. Before TERRY, P. J., 44th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

The court below entered judgment in favor of the plaintiff in the sum of $1,381. Defendant appealed.

*Error assigned* was the judgment of the court.

*Harry S. Knight,* and with him *A. W. Duy,* for appellant.—Unless limited by contract, the directors of a mutual fire insurance company are vested with authority to manage the company, and levy assessments, wherever they deem it necessary, to pay either accrued or anticipated losses: Hummel & Co.'s App., 78 Pa. 320; Schimpf & Son v. L. V. M. I. Co., 86 Pa. 373.

The contract in suit does not prohibit an assessment to pay anticipated losses, and the insured is bound to pay all assessments made by his directors: Moore v. Litchenberger, 26 Pa. Superior Ct. 268; Moore v. Bestline, 23 Pa. Superior Ct. 12; Moore v. Rohrbacher, 30 Pa. Superior Ct. 568.

Nonpayment of the assessment worked a forfeiture of the policy, and there can be no recovery: Gonder v. Lancaster Co. M. F. I. Co., 17 Pa. Superior Ct. 119; Lycoming M. F. I. Co. v. Rought, 97 Pa. 415.

*Clinton Herring,* and with him *H. Montgomery Smith,* for appellee.—The essential principle on which mutual insurance companies are organized is that each member will pay his proportionate share of expenses incurred,

and losses which happened during the period of his membership: People's Fire Ins. Co. v. Hartshorne & Co., 90 Pa. 465.

Since losses and expenses cannot be determined in advance, a member cannot be assessed for losses or expenses which have not actually happened: Rosenberger, Light & Co. v. Washington Fire Ins. Co., 87 Pa. 208; and a policy cannot be forfeited for refusal to pay an illegal assessment: Bannister v. Fire Ins. Co., 50 Pa. Superior Ct. 45.

OPINION BY LINN, J., April 17, 1922:

This appeal is from judgment for plaintiff on a case stated to determine liability on a policy of fire insurance. The insurance company asserted the policy was suspended because plaintiff did not pay an assessment levied on his premium note; he insisted the assessment was illegal because levied to pay future losses and expenses. The court held defendant could levy assessments for past losses only; that the assessment was illegal, the policy in force and plaintiff entitled to recover. The question now is whether the assessment to pay future losses was valid, and the answer to that question depends on the contract of the parties.

Appellant was incorporated in 1875 to transact business upon the mutual principle, pursuant to the Act of April 2, 1856, P. L. 211. Section 11 provides, "......all persons insuring with [the company] and continuing to be insured therein, shall thereby become members during the period they shall remain so insured, and no longer, and shall pay such rates as shall be determined by the board of directors, and be liable for all losses and expenses of said company, to the amount of the premiums paid, or agreed to be paid by said members respectively."

The plaintiff became a member and policyholder August 12, 1910. The policy provided, "In consideration of the stipulations herein named and of Two 04/100 Dollars premium [appellant] does insure (plaintiff) for the

term of five years from the 12th day of August, 1910, at noon, to the 12th day of August, 1915, at noon, against ....." loss by fire, etc. It also stated: "And the insured has become a member of the said company by depositing in addition to the cash premium paid a premium note for the sum of One hundred and two dollars, subject to assessment at such times as the board of directors may, by the act of incorporation, require. Whenever an assessment shall have been made upon the premium notes, and the same is not paid within thirty days after having been demanded by the company......the policy of insurance given upon such notes shall be null and void until the assessment be paid, and if said assessment be not paid within six months from the date thereof, the policy may be cancelled on the books of the company for nonpayment of assessment without notice, and the policy shall lapse."

The property was destroyed by fire April 27, 1915. The assessment in question had been levied by the board of directors on January 19, 1915, and plaintiff received proper notice on February 15, 1915. The case states: "This assessment was not levied for the purpose of paying past losses, but was made to keep a balance in the defendant company's treasury to pay future expenses and in anticipation of future losses." It realized $17,-192.40. After the fire, plaintiff tendered his check for his assessment, $5.10, and the company refused to receive it, informing him that his policy was void for nonpayment of the assessment in time.

Between the respective dates of his membership and of the unpaid assessment, three other assessments had been levied and paid. The first assessment during his membership, known as assessment No. 22, was levied on January 14, 1911, on all premium notes in force on December 31, 1910. Plaintiff received notice of it February 20, 1911, and paid it. Assessment No. 23 was levied September 10, 1912, on all premium notes in force September 1, 1912, and plaintiff received notice October 1, 1912, and paid it. Assessment 24 was levied January

20, 1914, on premium notes in force December 31, 1913; notice was given February 16, 1914, and plaintiff paid promptly. These assessments were all for the same sum, —5% of his premium note. The case states that "all of said assessments produced in part a fund to pay anticipated losses that had not occurred at the time the respective assessments were levied, although no notice of this fact was given to the plaintiff other than......" what might be obtained by examining the statements of account accompanying the notices. Assessment No. 25, which he refused to pay, differed from those he paid by containing a statement that the money would be used for "future expenses." All the notices warned members that if payment was not made within thirty days "the policy of insurance given upon such notes shall be null and void until such assessment is paid."

As we have said, the decision turns on the meaning of the contract. We have quoted its terms. Plaintiff was "subject to assessment at such times as the board of directors may, by the act of incorporation, require," and the act of incorporation made him "liable for all losses and expenses......," during membership. What is meant by "losses" so used? As a member of a mutual company, plaintiff was an insurer, and he joined in insuring other members against loss occurring during membership. "Losses" designates what he insured against. If loss occur during membership, a member must contribute on the basis agreed upon. As long as he does not contribute more during membership than required by his agreement to pay his share of the losses then occurring, he has merely performed his contract and is not injured. If his membership expired, or if he withdrew before the term specified in his policy, at a time when he had contributed more than sufficient to pay his share of losses and expenses then sustained, he would be entitled to a return of the unearned part of the assessment. The directors were his representatives, with powers conferred by statute and the charter to ascertain

the amount and the time of the assessment: Hummel & Co.'s App., 78 Pa. 320, 325; People's Fire Ins. Co. v. Hartshorne & Co., 90 Pa. 465, 470.

When plaintiff became a member on August 12, 1910, he may or may not have familiarized himself with the condition of the company he then joined, but on February 20, 1911, he received his first assessment notice (No. 22) advising him that all premium notes in force December 31, 1910, were assessed. The statement of account accompanying the notice advised him, among other things, that the company had $5,397,125 of insurance in force, and held $337,590.42 of premium notes; that it owed over $6,000; and that the assessment "now being collected will give the company a substantial cash balance over all liabilities." A member should at once have discerned from that statement that if "a substantial cash balance over all liabilities" would remain, the assessment levied was intended to raise money for losses and expenses other than those then ascertained, though we predicate nothing upon that inference now. The statement also contained a list of all the losses sustained in 1910, totalling $13,891.57, and in part of 1909, $4,037.75. Notices for assessments 23 and 24 had no statement, such as appeared on No. 22, that a cash balance would result from its payment, but contained a list of losses sustained during the periods between assessments.

As plaintiff's agreement was to contribute to the insurance of others during his membership, is it not immaterial when he paid, so long as he paid at one time no more than was reasonably necessary at that time in the circumstances properly to be considered by the board of directors? It is not suggested in this case that assessment No. 25 was unreasonable in amount, or made by any mistake or fraud. Those defects are absent. The complaint is that the directors exceeded the powers delegated to them in the single respect of the time of the assessment,—that the amount sought to be raised was to pay future losses and expenses.

While reference to some facts stated may be immaterial in arriving at the meaning of the contract, it is not without interest to observe, that the method and time of assessment here involved resulted in requiring a very much smaller sum for administration expenses of the company, and put it in funds to pay ascertained losses more promptly, than upon the theory of assessment proposed by plaintiff. The case states that the expense of levying an assessment upon the policyholders of the defendant is $500, and the exhibits show that during plaintiff's membership more than thirty losses occurred per year, so that if, as plaintiff contends, an assessment may only be made after a fire has actually occurred and a loss has been formally ascertained to exist, the members would have to raise more than $15,000 to pay the expense of levying assessments, instead of the sum of $500, which was so spent where the assessments were levied at the intervals specified. It also appears that considerable time must elapse between the date of the action of the board in levying an assessment and payment by members, during which period a member entitled to indemnity, must wait for payment. It is certainly desirable to levy the assessment at the reduced expense, and to be able to pay losses promptly in accordance with the apparent practice of the company, unless the contract of membership prohibits it.

As the assessment was for a reasonable amount only, free from fraud and mistake, and as the sum demanded was to be used only to pay expenses and losses occurring during plaintiff's membership, why may the board not require such amount to be advanced in view of such obvious benefits? The statute makes members "liable for all losses and expenses......to the amount of the premium paid, or agreed to be paid" during membership; and the policy made the premium note "subject to assessment at such times as the board of directors may, by the act of incorporation, require." There is no requirement that the loss must be first ascertained before

assessment may take place; the requirement is that a member's money may only be used to pay a loss against which he has insured, and necessary administration expenses, i. e., loss occurring during his membership. The contract does not mean that there is no limitation upon the power of the board of directors; unreasonable amounts may not be levied merely to reduce the expense of levying assessments over a period, or for any other reason.

The learned court below interpreted Rosenberger, Light & Co. v. Washington Mutual Fire Ins. Co., 87 Pa. 207, as requiring a decision that assessment No. 25 was invalid. In that case, the contract required a decision against an assessment to pay losses not yet ascertained. The members had specifically expressed their agreement in article 14 of the by-laws that "in all cases of loss or damage by fire to any member of this company, after the damage is ascertained, an equal and just assessment shall be laid upon every member of the company in proportion to the amount insured sufficient to cover said loss." Having agreed that assessment shall take place "after the damage is ascertained," of course as the court said, (87 Pa. 211) nothing could "be more certain than that the managers had no authority to make assessments in anticipation of losses." But we have no such restrictive provision here and its absence is significant and the case stated shows obvious advantages to membership not so restricted. That decision does not support the contention of appellee, and no other controlling decisions of Pennsylvania are cited. To sustain objection to the assessment we have been referred to decisions made in other states developing the meaning of the other contracts, substantially differing from the contract now before us. Generally speaking, a contract must be interpreted as the parties have made it, and decisions concerning other and different contracts of membership can be of little, if any, aid. Mutual insurance is of course well understood: Schimpf & Son v. L. V. Mut. In-

surance Co., 86 Pa. 373, 376; but membership contracts therefor may and do differ in material particulars, as will appear by a comparison of the contract in this case with the contracts in the Rosenberger case (supra), in the Schimpf case (supra), in Susq. M. F. Insurance Co. v. Stauffer, 125 Pa. 416, 425, and Given, Receiver, v. Rettew, 162 Pa. 638.

We are therefore constrained to hold that plaintiff's conduct in refusing to pay in accordance with his contract deprived him of the right to call for payment under the terms of the policy held by him, when his property was destroyed by fire.

The judgment is reversed; the record returned with instructions to enter judgment for defendant on the case stated.