Miller, Appellant, *v.* Elk County Mutual Fire Insurance Company.

Argued May 12, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Alfonse J. Straub,* with him *George F. Greiner,* and *Edward J. Blatt,* for appellant.

*Robt. F. Pontzer* and *W. W. Barbour,* for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

Appellee, a mutual fire insurance company, insured appellant's house and barn, for a consideration of $1.00 and a promissory premium note payable in such installments and at such times as the company should by assessment direct. Such an assessment was made on January 12, 1932, and appellant was notified, but he made no payment until 7:00 P. M. on June 1, 1932. His dwelling house had been destroyed by fire at 2:00 A. M. on the same day, of which fact the agent who accepted his payment was aware. Appellee still retains the amount so paid, but refuses to compensate appellant under the policy for the loss of his house. Section 12 of the by-laws of appellee company provides: "All assessments shall be paid promptly within thirty days after notice has been given . . . Neglect to comply with this rule will render the policy liable to forfeiture until paid." Appellant sued in assumpsit on the policy and the court below directed a verdict in his favor. Appellee moved for judgment n. o. v., which was granted by the court en banc, and this appeal was taken.

The by-law on which appellee rests its defense is peculiar in that it provides that the policy shall be "liable to forfeiture" until a delinquent assessment is paid.

Fire insurance contracts of this sort usually provide that in the event of default, the policy shall be "null and void," or "void," or shall "stand suspended" from the period of default to the time of payment. Such provisions do not operate to automatically cancel the insurer's obligation, but merely render the policy subject to cancellation at the election of the company. Until that option is exercised by some formal action of the insurer, the contract remains in qualified existence, capable of being restored or revived if the company so desires: *Hummel & Co.'s Appeal*, 78 Pa. 320; *Columbia Ins. Co. v. Buckley*, 83 Pa. 293; *Washington Mut. Fire Ins. Co. v. Rosenberger*, 84 Pa. 373; *Crawford County Mutual Ins. Co. v. Cochran*, 88 Pa. 230; *Lycoming Fire Ins. Co. v. Rought*, 97 Pa. 415; *Blackburn v. Farmers Ins. Co.*, 89 Pa. Superior Ct. 569. However, this court has uniformly held that where there is a default in payment of premiums or assessments, the protection of the policy is automatically suspended from the time of default to the subsequent revival unless there is an express provision otherwise in its terms or in the company's by-laws: *Hummel & Co.'s Appeal, supra; Washington Mut. Fire Ins. Co. v. Rosenberger, supra; Crawford County Mutual Ins. Co. v. Cochran, supra; Blackburn v. Farmers Ins. Co., supra.* This is true whether or not the agreement between the parties expressly imposes such suspension: *Hummel & Co.'s Appeal, supra; Washington Mut. Fire Ins. Co. v. Rosenberger, supra; Crawford County Mutual Ins. Co. v. Cochran, supra.*

While the by-law involved in the present case does not specifically state that default will work an immediate forfeiture, this does not distinguish it from the cases cited above, for the literal import of its language is the same as the legal meaning given to the provisions for delinquency in the contracts involved in those decisions. Under the authorities, appellant's delay in payment beyond the thirty day period had the effect of suspending the operation of this contract automati-

cally. This doctrine does not work hardship because it can only be injurious to the insured where he has consciously breached his obligation to the company.

It is equally well established that any loss occurring during such a period of suspension must be borne by the insured: *Washington Mut. Fire Ins. Co. v. Rosenberger, supra; Crawford Mutual Ins. Co. v. Cochran, supra; Blackburn v. Farmers Ins. Co., supra; Lycoming Fire Ins. Co. v. Rought, supra; Knouse v. Mut. F. Ins. Co.,* 78 Pa. Superior Ct. 542.

But, appellant urges that, although there was a breach of contract by his failure to meet the assessment within thirty days, the fact that his delayed payment was accepted and retained by appellee constituted a waiver and restored the policy to full force and effect as of the time of the default. This contention is not sound. Under the contract appellant shared in the mutual obligations of the policyholders of the company, and was bound to pay such assessments as were validly levied by its proper officers to defray losses suffered by other members. He was himself, to that extent, an insurer. See *Knouse v. Mut. F. Ins. Co., supra.* On the faithful performance of this obligation by each of the policyholders the entire existence of the company depends. The assessment levied January 12th was not merely a premium appellant could refuse to pay if he desired to discontinue the protection of his policy, but was a debt which could have been collected by action at law regardless of whether or not he severed his relations with the company thereafter: *Hummel & Co.'s Appeal, supra; Columbia Ins. Co. v. Buckley, supra; Knouse v. Mut. F. Ins. Co., supra.* Appellee had a right to receive this payment as a debt, and consequently the acceptance of that to which it was entitled cannot be construed as implying a promise to waive an existing breach. At the most this action brings about a revival of the policy which does not relate back to cure the breach created by the default. It provides new insur-

ance on the old terms. Insurance is of its nature prospective rather than retrospective, and does not provide protection against an occurrence in the past. Thus in the present case, at the time appellant paid the assessment, his house had been completely destroyed, and, as to it, no reinsurance was possible. As was said in *Blackburn v. Farmers Ins. Co., supra:* "The suspension is removed and the policy restored to operation whenever the assessment is paid before the directors annul or cancel the policy, but if a loss occurs during the period of suspension the insured cannot recover." It further appears that appellee's agent in accepting the payment of the premium expressly stated that it would revive the contract only as to the other buildings of appellant insured by the policy and still undamaged. Under these circumstances this is the only effect which may be given to the act of appellee in retaining the payment.

Appellant insists that the default did not deprive him of his right to relief because it did not constitute a breach of one of the mutual obligations of the parties. He contends that the only performance required of him was the payment of $1.00 and the delivery to the company of a promissory demand note, or premium note, for any assessments which might be levied during the period of his membership. This note was not in itself a satisfaction of his obligation to pay assessments as levied, but merely constituted a promise to do so: *Washington Mut. Fire Ins. Co. v. Rosenberger, supra.* Appellant's obligation was to meet the assessment within the time limit imposed by his agreement. This he failed to do, and his policy could, as a result, have been cancelled. Although it was not forfeited by appellee, and appellant subsequently made the payment required, he was in default at the time his loss occurred. As to that period of delinquency appellee had no contractual duty to protect him from loss. See *Washington Mut. Fire Ins. Co. v. Rosenberger, supra.*

Judgment affirmed.