## SUSQ. M. FIRE INS. CO. v. AARON STAUFFER.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 12, 1889—Decided April 15, 1889.
[To be reported.]

(a) The by-laws of a mutual fire insurance company provided: " § 27. If at any time hereafter, an assessment shall be made, the amount to be levied on premium notes, or policies of insurance, shall be rated according to the following classification:

"First. All members whose policies are in force at the time the assessment may be declared, shall be liable to assessment for all losses, adjusted, unadjusted, and unpaid, and all other liabilities then existing against the company, subject to abatement as hereinafter specified.

"Second. All members whose policies have expired, and are not in force at the time such assessment is declared, shall nevertheless be liable to assessment for all unpaid losses, and other liabilities, which existed at the time of the expiration of such policy or policies, pro rata with those then in force, and the amount thus ascertained and levied upon such expired policies, to be deducted from the gross amount

of liabilities of the company for which such assessment is to be made, and balance of liabilities, then remaining, to be assessed upon the policies then in force."

1. The scheme intended by the by-law was, that all policies which were in force at the time of the assessment, or at the time of the loss, both or either, should be liable for the loss, but the assessment should be laid in the first instance, upon the policies in force at the time of the loss, whether since expired or not; and the policies issued subsequent to the loss, and remaining in force at the time of the assessment, were to be assessed only for the balance, if the first branch of the assessment should be insufficient.

2. The by-law simply added to the general rule, that losses shall be paid by the policies in force at the time of their occurrence, another provision which is not unlawful, that if the assessment against such policies prove insufficient, then all existing policies, even though issued subsequently to the losses, shall be liable to make up the deficiency: Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492, explained and distinguished.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 119 July Term 1888, Sup. Ct.; court below, No. 49 October Term 1885, C. P.

On September 15, 1885, a transcript for an appeal by the defendant from a judgment before a justice of the peace in favor of the Susquehanna Mutual Fire Insurance Company against Aaron Stauffer, was filed in the Court of Common Pleas. The action was debt, by the insurance company, to recover an assessment upon a premium note.

On November 24, 1882, the plaintiff company issued a policy to the defendant, to continue for five years, and the defendant gave to the company the following premium note:

"For value received, and in consideration of a policy of insurance to be issued by the Susquehanna Mutual Fire Insurance Company of Harrisburg, Pa., upon the approval of my application for insurance in said company, of this date, I promise to pay the said company such sum or sums of money, and at such time or times as the board of directors of said company may, in conformity with the rules and by-laws require; payable within thirty days after notice.

Dated, November the 24th, at noon, 1882.

AARON STAUFFER,
Applicant."

On June 6, 1885, the company, by resolution of the board

of directors, directed an assessment known as No. 12, and mailed a notice thereof to Stauffer.   The resolution was as follows:

"Resolved that an assessment, No. 12, be and the same is hereby authorized and levied upon the premium notes of the different members, whose policies were in force when the foregoing losses were incurred, equal to the following percentages on the adjusted basis thereof, to wit:

2 per cent for policies in force September 27, 1875;

$5\frac{1}{2}$ per cent for policies in force September 15, 1876.

1 per cent for policies in force August 8, 1877.

·   *       *       *       *       *       *       *       *

4 per cent for policies in force April, 1884.

$\frac{3}{4}$ of 1 per cent for policies in force March 24, 1884.

$3\frac{3}{4}$ per cent for policies in force August 7, 1884, September 19, October 16, November 7 and 18, and December 18, 1884, and a due proportion as per schedule below for policies that were in force during a part of said period only, and that an abatement of 5 per cent be allowed to such as pay their assessment within thirty days from date of notice."

The by-law of the company under which this assessment was made, was as is printed in the syllabus.   Stauffer having refused to pay his assessment on the ground that it was not levied in accordance with the by-laws, the company brought this suit.

At the trial on April 19, 1888, before SCHUYLER, P. J., the plaintiff, with evidence of the above facts, proved also the losses upon which the resolution was based, among which were, a loss sustained September 27, 1885, of $296.50, and one sustained September 15, 1876, of $1,764.25.

This same by-law had been construed in Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492, but in that case it was incorrectly worded in the record before the court, thus:

"First. All members, whose policies are in force at the time the assessment may be declared, shall be liable to assessment for all losses adjusted *properly* and unpaid, and all other liabilities then existing against the company *shall be* subject to abatement as hereinafter specified.

"Second. All members whose policies have expired and are not in force at the time such assessment is declared, shall, nevertheless, be liable to assessment for all unpaid losses and other

liabilities which existed at the time of the expiration of such policy or policies, pro rata with those then in force, and the amount thus ascertained and levied upon such policies to be deducted from the gross amount of liabilities of the company, for which such assessment is to be made, and the balance of liabilities remaining to be assessed upon policies then in force."

At the close of the plaintiff's case, the defendant moved that a judgment of compulsory nonsuit be entered. The motion was granted and judgment of nonsuit entered, with leave, etc. The same day, the defendant moved that the judgment of nonsuit be vacated, and on May 2, 1888, after argument, the court, SCHUYLER, P. J., filed the following opinion:

The by-law that was before the Supreme Court in a suit by this same company against Gackenbach, 115 Pa. 492, was not as it was intended to be, an exact transcript of the by-law offered in evidence at the present trial, but we do not think the discrepancies of such a character as to warrant us in putting a different construction on the by-law from that adopted by the Supreme Court. Both by-laws contain the clause, " that all members whose policies are in force at the time the assessment may be declared shall be liable to assessment for all losses adjusted properly and unpaid, and all other liabilities then existing against the company shall be subject to abatement as hereinafter specified." In both trials it was conceded " that the policies in force at the time the assessment was declared, which were not in force at the time the losses and liabilities were incurred, were not included in the assessments." This concession the Supreme Court held to be fatal to the plaintiff's right to recover. It may be that, with the corrected by-law before them, and in the light of the ingenious argument that will be addressed to them, the Supreme Court may reach a different conclusion. We do not feel at liberty to assume that, however, and must therefore deny the present motion.

The plaintiff company thereupon took this writ, assigning as error the entry of the judgment of nonsuit and the refusal of the motion to vacate it.

*Mr. Henry W. Scott* (with him *Mr. O. H. Meyers*), for the plaintiff in error:

Arguments.

1. The by-law as appearing in Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492, provided an unconditional liability to assessment. The by-law as it really exists provides that all policies in force at the time of an assessment shall be "liable" to assessment, but does not compel them to be assessed. By the terms of the charter and the premium note, the assured, as a member of the corporation, submits himself to the acts of the directors, as the common representatives of all the members. He and they are bound by the assessments made by them, unless he can show fraud or gross mistake: Hummel's App., 78 Pa. 325; Peoples F. Ins. Co. v. Hartshorne, 90 Pa. 470. The burden of showing fraud or misconduct is on the defendant: Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 499.

2. Unless there is an express contract, a policy holder is not liable for losses which occurred before he was a member. The act of April 2, 1856, P. L. 214, under which all mutual insurance companies take their powers, provides in § 11, "All persons insuring with and continuing to be insured therein shall thereby become members during the period they shall remain so insured, and no longer." Such a limitation on their charter privileges would avoid any by-law requiring a policy holder to pay for losses which occurred before he was a member: Commonwealth v. Gill, 3 Wh. 248; Green's Brice, Ultra Vires, 15 and n.; Commonwealth v. Railroad Co., 27 Pa. 351.

3. The assessment No. 12 was made June 6, 1885, for twenty-five different losses of the company from September, 1875, to December, 1884: some of them had been in litigation, and all of them previously unadjusted. Mr. Stauffer's policy was issued November 28, 1882, for five years from November 24th. It is admitted that there were a number of policies issued after December, 1884, which were in force June 6, 1885, and upon which no assessment was made. It is claimed this avoids the assessment against the defendant, because the first section of by-law 27 requires such assessment. The first clause of that section undoubtedly renders them "liable" to assessment, if read without reference to anything else. But if this was mandatory, and left no discretion in the board of directors to say under what condition they would exercise this right of assessment, the final clause of that section requires that they shall be assessed *only* after the abatement is made, which is provided for in the second section.

4. But it is distinctly proven that all these losses covered by assessment No. 12 were fully provided for by the appropriation made under the second section. Therefore the abatement to be made in favor of policies not yet issued at the time of any particular loss, was a total abatement, and no further liability existed to assess for. The by-law incorrectly printed in 115 Pa. 492, supra, if not unintelligible altogether, can have only the meaning that the abatement to be made from such policies shall be the *unadjusted* losses and liabilities, other than those embraced in the expression, "losses adjusted properly and unpaid," and the construction put by the court upon the by-law there has no significance whatever here.

5. An assessment made to cover several losses, occurring in different years, necessarily involves separate schedules of assessment. This is provided for in the second section of the by-law. Losses which occurred in January, 1880, but assessed for in 1884, would be assessed pro rata upon policies which were in force in January, 1880, but which had expired at different periods before 1884; and upon policies issued any time before January, 1880, but were still in force when the assessment was declared. The amount assessed upon the expired policies is then deducted from the gross liabilities of the company, and each successive loss assessed upon another class of policies, not issued at the time of the first loss assessed for, but in existence at the time of the second loss.

6. The construction contended for on the other side is inconsistent with the limitation of power contained in the charter, is inconsistent with the contract contained in defendant's policy, embracing in the same paragraph the very provision of the by-law, which we are now seeking to interpret. Therefore a construction must be adopted which gives the by-law validity, and is at the same time consistent with the contract of insurance itself. The construction we contend for was adopted in Susq. M. F. Ins. Co. v. Tunkhannock Toy Co., 15 W. N. 306.

*Mr. W. S. Kirkpatrick* (with him *Mr. M. Kirkpatrick*), for the defendant in error:

1. The case is clearly ruled by Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492. The wording of the resolution, and the

evidence given by the secretary of the company [set out in the opinion of the Supreme Court], show that assessment No. 12 was not made in accordance with the requirements of the by-law. It was not made upon all the policies in force at the time of the assessment, nor was an assessment laid in accordance with the second clause of the by-law upon the expired policies, pro rating them with policies then in force, and deducting the amount thus assessed upon the policies expired from the losses and liabilities, and assessing the balance of such losses and liabilities upon all the policies in force at the time of the making of the assessment.

2. On the contrary, the method actually pursued was to take the expired policies existing and in force at the time of the happening of the loss, and those in force at the time of the loss and still in force at the time of the assessment, and, taking the two kinds together, to assess the loss upon them both. This, of course, would extinguish the loss, and no deduction of the amount assessed upon the expired policies was or could be made from the total outstanding losses and liabilities for which the assessment was required to be made, and therefore no subsequent assessment of the balance thus ascertained could be laid upon all policies in force at the time of the assessment, which would include a large number of policies not existing at the time of the happening of the losses.

3. This was entirely ignoring the special method of assessment provided for in the by-law which formed part of and qualified the contracts of the members with each other and with the company. It was an assessment according to the ordinary rule that only the policies shall be liable which were in force at the time of the happening of the loss, a rule that would only prevail in the absence of a special provision attending the method, as in the present case. The case of Susq. M. F. Ins. Co. v. Tunkhannock Toy Co., 15 W. N. 306, is not in conflict with Susq. M. F. Ins. Co. v. Gackenbach, and if it were would be regarded as overruled by the later case.

OPINION, MR. JUSTICE MITCHELL:

The only point of contention in this case is the validity of the assessment made by the plaintiff in error, and that depends on the true construction of the by-law of the company, subject

to which the policy was issued, and defendant's premium note given.

The by-law reads as follows : " Sec. 27. If at any time hereafter, an assessment shall be made, the amount to be levied on premium notes, or policies of insurance, shall be rated according to the following classification, to wit :

" First. All members whose policies are in force at the time the assessment may be declared, shall be liable to assessment for all losses, adjusted, unadjusted, and unpaid, and all other liabilities then existing against the company, subject to abatement as hereinafter specified.

" Second. All members whose policies have expired, and are not in force at the time such assessment is declared, shall nevertheless be liable to assessment for all unpaid losses, and other liabilities, which existed at the time of the expiration of such policy or policies, pro rata with those then in force, and the amount thus ascertained and levied upon such expired policies, to be deducted from the gross amount of liabilities of the company for which such assessment is to be made, and balance of liabilities, then remaining, to be assessed upon the policies then in force."

The wording of this by-law is confused and obscure, but the general scheme intended, is reasonably clear. It is that all policies which were in force at the time of the assessment, or at the time of the loss, both or either, shall be liable for the loss, but the assessment shall be laid, in the first instance, upon the policies in force at the time of the loss, whether since expired or not, and the policies issued subsequent to the loss, and remaining in force at the time of the assessment, are to be assessed only for the balance if the first branch of the assessment should be insufficient.

In pursuance of this general intent, the first clause directs, not that all members whose policies are in force at the time the assessment is declared, shall be *assessed*, but that they shall be *liable to assessment*, and qualifies this liability by making it subject to a specified abatement. The second clause then proceeds to define the abatement, which is that policies now expired, but which were in force when the liability accrued, shall be assessed, pro rata with all the policies then in force (i. e., at the time of the loss or liability incurred), and this first branch of the assess-

ment shall be deducted from the total of liabilities, and the balance only be then assessed upon the other policies " then in force," i. e., those which were in force at the time of the loss, and which have not yet expired.

A considerable part of the ambiguity arises from the use of the words, " then in force," in two different places. In the first, they clearly refer to the expiration of the policy (or practically to the date of the loss to be assessed for). In the second, their application, just as they stand in the sentence, would be very uncertain, but a reference to the plain general intent of the section, shows that they must refer to the same time as the first, to wit, the date of the loss. The section takes up the policies in force at the time of a loss, and divides them into two classes, the expired and the unexpired, but directs that they shall both be assessed at the same rate. The expired policies are first assessed their pro rata, and then the unexpired, and the words " then in force," twice used, refer to these two classes, the time applicable to both of which is, however, the same.

Thus, we may take the schedule of the assessment in the present case for an example. The assessment was made June 6, 1885 ; the first loss included in it, amounting to $296.53, occurred September 27, 1875. The assessable basis of policies which had been in force on that day, whether since expired or existing on June 6, 1885, amounted to $21,866.60. On this an assessment was made of two per cent, which produced a sum large enough to pay the losses in full, with a margin for expenses and loss in collection. The class primarily liable to pay, thus furnishing a sufficient fund, there was no necessity to resort under the first clause of the by-law to the policies issued after the loss.

Proceeding then to the next loss, September 15, 1876, amounting to $1,764.25, the assessable basis of policies in force on that day, amounting to $41,391.55, an assessment of 5½ per cent was made to cover that loss, with margin for contingencies.

And so on through the schedule, practically making a new and separate assessment for each loss, on the policies in force at the date of its occurrence. If the proportion of the losses to the assessable sum total of the policies in force at any particular date, had been so large, or the number of insolvent

members so great, that the policies in force at that date could not be assessed for a sufficient amount, then resort would have been had to the reserve class of subsequent policies; but failing such necessity, the by-law did not require that they should be called on, and they were not.

The assessment was at the same rate on all the policies in force at each date of loss, but as some policies were subject to assessment for a greater number of losses than others, their aggregate rate would of course be larger. This is necessary to be noticed, as it explains some apparent contradictions in the testimony of the witness Huntzinger. On this point he says: "Q. You levied 2 per cent for policies in force September 27, 1875, didn't you? A. Yes. Q. And you undertook to collect that 2 per cent on policies then in force? A. Yes; on policies that were then in force, but expired before the next loss incurred. Q. Then upon the next policies that were in force at the time the $5\frac{1}{2}$ per cent was levied, you levied a percentage of $5\frac{1}{2}$ per cent upon all the policies that were in force at that time? A. Yes; now, then, if there was a policy in force when the first was levied, which still remains in force, then it was levied the 2 per cent in the first loss, and the $5\frac{1}{2}$ per cent, making $7\frac{1}{2}$ per cent. Q. So that the policies that were in force on September 15, 1876, and that also had been in force September 27, 1875, were subjected to the 2 per cent and the $5\frac{1}{2}$ per cent? A. Yes."

Thus considered, the plan prescribed by the by-law is clear and consistent, and has the merit of departing very little from the general rule of the law, that losses shall be paid by the policies in force at the times of their occurrence.

This by-law simply adds to that general rule, that if the assessment upon such policies proves insufficient, then all existing policies, even though issued subsequently to the losses, shall be liable to make up the deficiency. Such a provision is both a burden and a protection. It imposes on a person taking out a policy, a liability for past losses, which he would not otherwise incur, and it gives him the security of all future policy holders to make good his losses, though they may have occurred before such policies were issued. The case is like that of a new partner coming into an established business. Ordinarily, and in the absence of a special contract, he is liable

only for debts incurred subsequently, but if he chooses to come in on the same footing as the others, and take his share of the old debts with the old profits, there is nothing unlawful in his doing so. Nor is there anything unlawful in the members of a mutual insurance company doing what is practically the same thing. There is nothing in the case of Insurance Co. v. Toy Co., 15 W. N. 306, to impugn this view. Whatever may have been the wording of the by-law there in question, which does not clearly appear in the report, it did not call for such an assessment, for, speaking of the notice, TRUNKEY, J., says, " prima facie it evidenced a wrongful assessment in violation of the contract." In the present case such an assessment, if it had been required, would have been within the express terms of the contract. The result thus reached in the present case, is at variance with the construction given to what was intended to be the same by-law in Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492. But it is entirely clear that the court was misled in that case by the inaccuracy of the record. In the first clause of the by-law, as there given, the word " unadjusted " was omitted, and the words " shall be " inserted, so that it read, " all members, etc., shall be liable to assessment for all losses adjusted *properly* and unpaid, and all other liabilities . . . . . *shall be* subject to abatement," etc. The insertion of the words · " shall be " before the words " subject to abatement " divided the sentence into two clauses, made the direction to assess *all policies* for adjusted losses, absolute, and limited the abatement to " other liabilities," whatever they might be. On the by-law then before the court, the decision was clearly right, but it is not authoritative on the present case. The learned judge below noted the difference, but preferred to have this court declare the effect.

Though the examination of the secretary at the trial was very long, and his answers to frequent repetitions of the same question not entirely clear or consistent, yet we gather from it as a whole, that the assessment was declared and levied, substantially, upon the basis of the by-law as construed herein. It was therefore a regular and lawful assessment, and entitled the company to a verdict, unless defendant could make out a good defence on other grounds.

Judgment reversed, and venire facias de novo awarded.