Kittelberger, Exe., *v.* Clearfield Ins. Co., Appellant.

Argued October 25, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Clarence R. Kramer,* for appellant.

*D. Edward Chaplin,* and with him *J. Mitchell Chase,* for appellee.

Opinion by Gawthrop, J., December 16, 1932:

Defendant, a mutual insurance company, incorporated in Pennsylvania, issued to plaintiff its policy insuring him for five years to the amount of $1,200 against loss by fire upon a dwelling house owned by him, "in consideration of the stipulations herein named and of Two and 55/100 Dollars Premium and a Premium Note of Eighty-five Dollars." The house was totally destroyed by fire on August 26, 1930, and this action was brought upon the policy. The policy was issued upon a written application signed by the insured, and contained a copy thereof, a copy of the by-laws, rules and regulations of the company, and a copy of the premium note which provided for the payment of the sum of $85 at such times and by such install-

ments as the president and directors of the company should from time to time assess, order and demand, pursuant to the rules and regulations of the company. The copy of the application, as set forth in the policy, contained the following: "Incumbrance—If any, state amount and to whom. None." It contained also these provisions: "The undersigned applicant for the proposed insurance hereby covenants and agrees to accept the policy issued upon this application ...... And said applicant further agrees and covenants to and with said company that all the foregoing answers and representations are warranties of the party or parties hereunto insured and they are hereby made a part of the policy of insurance to be issued hereon; and if they be in any respect untrue, such policy shall be void and of no effect. ...... Buildings to be considered unoccupied when no one is living in them or on the premises." The copy of the by-laws, as set out in the policy, provided: "No dwelling house shall be unoccupied for a longer period than ten days without consent of the Directors or Executive Committee, under penalty of forfeiture of policy and insurance." The policy provided: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; ...... or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant and so remain for ten days. ...... This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto."

The defenses averred in the affidavit of defense were, first, that the policy never became effective because at the time of the signing of the application and the issuance of the policy there were three encumbrances,

in the form of judgments, upon the premises; second, that, if the policy was ever in effect, it became void by reason of the fact that the premises became unoccupied and vacant on or about May 16, 1930, and so remained continuously until the happening of the fire on August 26, 1930; and third, that no proper proofs of loss were filed.

At the trial plaintiff offered, and was permitted to introduce in evidence the policy, including the copy of the application incorporated therein. He proved the total destruction of the house by fire, that immediate notice of that fact was given to defendant, the value of the property at the time of the fire, and that defendant had refused to pay the loss.

Defendant's witnesses testified that the tenant, Rhodes, who occupied the house when the policy was issued, moved to Ohio about May 16, 1930, and that from at least as early as June 6, 1930 to the day of the fire, August 26, 1930, no one lived on the premises, although a small amount of furniture remained there. There was testimony that the father and mother of Rhodes went into the house every day or two. Plaintiff offered no countervailing proof on this subject.

Defendant offered and was permitted to prove the existence of encumbrances against the property at the time the contract of insurance was entered into. Subsequently plaintiff moved to strike out this evidence and the trial judge granted the motion. It appeared by the testimony of a witness who was secretary of the company when the policy was issued and until January 20, 1931, that the insured furnished proof of loss within the sixty day period provided in the policy, and that the company refused to accept it, and duly informed the insured by letter that the executive committee refused to make payment because of the fact that the property had been vacant and unoccupied for sixty days and upwards previous to the fire. It ap-

peared also that T. A. Woods, a director of the company, was the local agent who took the application for the policy in suit; that one of his duties was to collect premiums and assessments for the company when the bills for the same were sent to him, and that he collected money, issued receipts and turned the money over to the principal office of the company. Plaintiff called Woods as a witness in rebuttal. He testified that in April, 1931, more than seven months after the fire, plaintiff paid him $4.25 which represented an assessment made by the company against plaintiff under the policy in suit, and that he issued to plaintiff a receipt for the payment and turned the money over to the company. The trial judge instructed the jury that the sole issue they had to pass upon was whether the house was permitted to become vacant and so remain for ten days without the consent of the company. The verdict for the plaintiff establishes the fact that there was no such vacancy. Defendant brings this appeal.

It is urged in its behalf that it is entitled to have judgment entered in its favor non obstante veredicto, first, because the violation of the covenant against encumbrances was established by documentary proof, and second, because its evidence of violation of the vacancy and non-occupation clauses of the policy is unrebutted. These contentions cannot prevail. The record contains no evidence of violation of the covenant against encumbrances, because the court struck it out. Therefore, it is not part of the record which may be considered under a motion for judgment n. o. v. The answer to the question whether the house was permitted to be vacant for more than ten days depended upon oral testimony. Therefore, the credibility of the witnesses was for the jury under proper instructions from the court.

Complaint is made that error was committed in striking out defendant's evidence to the effect that

at the time the insurance was effected the property was encumbered by judgments and mortgages. The ruling was made on the ground that defendant refused to offer in evidence the original application containing the covenant against encumbrances and that, therefore, there was nothing in the record to show that plaintiff had made such a covenant. The ruling was wrong. The policy, including the copy of the application incorporated therein, had been offered in evidence by plaintiff without limitation of the scope of the offer. He had not questioned the correctness of the copy of the application. In the circumstances there was no necessity for defendant to produce the original application, or offer it in evidence. It could stand upon the case as it had been presented by plaintiff and was entitled to offer evidence of the breach of the covenant against encumbrances as set forth in the copy of the policy which plaintiff had introduced. Therefore, the evidence that there was a breach of the covenant against incumbrances which prevented the policy from becoming operative should not have been stricken out. No question was raised by plaintiff as to whether the judgments offered in evidence by defendant were liens or encumbrances upon his land. Defendant seems to have assumed that they were liens because the objection that there was no proof that the liens covered the land was limited to one of the mortgages. If either of the judgments or the mortgages was a lien on the land when the application was executed and the policy was issued, there was a breach of the covenant against encumbrances which rendered the policy void, and this constituted a valid defense to the suit: Penn Mutual Fire Ins. Co. v. Schmidt, 119 Pa. 449; Coal Co. v. Ins. Co., 13 Pa. Superior Ct. 626. The general rule is that in actions on policies of insurance containing a warranty of the truth of certain facts, the validity of the contract depends on the truth of the warranty, and

the policy is avoided if it turns out that the facts were not as warranted: Benvenuto v. Central Mfrs. M. Ins. Co., 80 Pa. Superior Ct. 213, and cases cited therein.

Another contention of appellant is that the trial judge erred in charging that the fact that the house was unoccupied for more than ten days in violation of section 15 of the by-laws was not a valid defense to the suit unless the company had "done something to notify Mr. Cathcart under section 15 of the by-laws" that they considered the policy cancelled. It is to be observed that this section of the by-laws does not refer to a cancellation of the policy, but provides that the penalty for unoccupancy for fifteen days without the consent of the company shall be "forfeiture of the policy and insurance." Such an unoccupancy, if it occurred, constituted a breach of the conditions of the policy and was a valid defense to the action. Under the terms of the policy, if the insured desired that the property be and remain unoccupied for a longer period than ten days, he was bound to secure the consent of the company in order to avoid a forfeiture of insurance. Unoccupancy for more than ten days without the consent of the company gave the latter the right to treat the policy as void. In the absence of a contractual or statutory provision, the company is not bound to any affirmative act of avoidance or forfeiture, except in so far as may be essential to prevent the operation of the doctrines of waiver and estoppel: 32 C. J. pg. 1313, Sec. 561. It follows that it was error to fail to submit to the jury the question whether the house was unoccupied in violation of the conditions of the policy.

The eleventh and twelfth assignments of error complain of rulings of the trial judge excluding defendant's offer to prove that it made objections to the proof of loss filed by plaintiff and made demand upon him by registered letter to explain the change of use or occupancy of the building, and that plaintiff never made any such explanation. We find no merit in these as-

signments. The record shows that the proof of loss was not offered in evidence. It does not appear in the printed record. In addition the company, from the beginning, denied liability on other grounds than failure to file proof of loss. From the state of the record we are unable to determine the relevancy of the evidence excluded by the rulings which are the subject of these assignments.

None of the other questions raised by appellant by any assignment of error requires discussion. But, as the case must be remanded for a new trial, we deem it advisable to refer briefly to a question which was elaborately argued in the briefs of counsel. That question is whether the fact that the company accepted a premium or assessment of $4.25 with knowledge of facts avoiding the policy estopped it from asserting the avoidance of the policy and the forfeiture of the insurance. It is well settled that "if an insurance company accept *unearned* premiums or assessments with a knowledge of facts avoiding the policy, it is estopped to assert the avoidance after a loss has occurred:" Central Market St. Co. v. Ins. Co., 245 Pa. 272. As pointed out by Mr. Justice KEPHART in Fedas v. Ins. Co. of State of Penna., 300 Pa. 555, "an estoppel exists where one by his words or conduct causes another to believe in the existence of a state of facts, inducing reliance thereon in some act of mutual concern, and the inducing person wishes to assert, prejudicially, facts in opposition to those first held out to be true, on which action was taken. This cannot be done; the one making the inducement is estopped. But one is not estopped unless the contemplated action would prejudicially injure another." How was plaintiff injured, or in what respect did he alter his position to his prejudice as a result of the collection of an assessment of $4.25 by the company in April, 1931? The fire had occurred more than seven months before.

The rights and liabilities of the parties under the policy had become fixed before the payment of this assessment. The plaintiff had learned by defendant's letter of November 1, 1930, that it denied liability under the policy on the ground that it was not in force at the time of the fire, because the house had been unoccupied for more than sixty days prior to the date of the fire. The principle underlying the cases on this subject is that where the company has knowledge of a violation of a condition in the policy and yet treats the policy as in force by making and collecting assessments under it from the insured, it cannot afterwards set up the breach of such condition to defeat the contract: Kalmutz v. Ins. Co., 186 Pa. 571. But in all of the cases which have come to our notice, in which this principle has been applied, the assessment or premium was received by the company before the loss occurred, and the act of the company in receiving it led the insured to believe that he had protection under the policy. In the present case it cannot be said in truth that the acceptance of the assessment by the company had any such effect. In the circumstances there would seem to be no reason to hold that the company is estopped from setting up the breach of the condition of the policy on which it relies.

The judgment is reversed and a venire facias de novo is awarded.