567 F.2d 1255
 SCHIFALACQUA, Philip a/k/a Philip A. Schifalacqua, an
incompetent by his guardian, Rev. Ildebrando E. Schifalacqua,
v.
CNA INSURANCE and Continental Casualty Company, Appellants.
 No. 77-1184
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 6, 1977.
Decided Dec. 21, 1977.
 
 John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellants.
 George J. O'Neill, Philadelphia, Pa., for appellee.
 Before SEITZ, Chief Judge, and STALEY and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 CNA Insurance and Continental Casualty Company (hereinafter "CNA" collectively), defendants below, appeal from the district court's judgment that they are precluded from denying that plaintiff's policy was in effect at the time of the accident in issue. The District Court for the Eastern District of Pennsylvania, sitting in diversity and applying Pennsylvania law, held that because CNA accepted plaintiff's late premium payment and thereafter routinely processed a change of beneficiary form it is now estopped to deny liability under the policy. Schifalacqua v. CNA Insurance Co., No. 75-1266 (E.D.Pa. Dec. 7, 1976).
 
 
 2
 Plaintiff was insured for several years by CNA under a group disability insurance policy sponsored by the Philadelphia County Medical Society. The policy required payment of premiums in advance semi-annually on January 1 and July 1 of each year. A thirty-one day grace period beyond each due date was established during which the insured could make a late payment without any intervening loss of coverage. The policy provided that failure to pay by the end of the grace period terminated the policy.
 
 
 3
 Plaintiff failed to pay the premium before the expiration of the grace period on July 31, 1973. On September 6, 1973, he was injured in an automobile accident. His injuries rendered him disabled within the terms of the policy.
 
 
 4
 Plaintiff's injuries left him unable to manage his own affairs. On September 29, 1973, his sister discovered that plaintiff had failed to make the payment due July 1, 1973. She then sent a check dated September 29, 1973 to CNA's agent, S. Z. Goodstein & Co., for the total amount due. That check was deposited in a company account on October 3, 1973, and the cancelled check was returned to plaintiff's sister in due course bearing no restrictive endorsement.
 
 
 5
 On November 29, 1973 plaintiff's sister wrote CNA's agent advising it of plaintiff's total disability and requesting a change of beneficiary. CNA's claims representative then sent out claim forms to the sister. The request for a beneficiary change was forwarded to CNA's underwriters, who in turn sent out forms to request a change in beneficiary to the sister in early December, 1973.
 
 
 6
 Plaintiff's sister completed the claim and change of beneficiary forms and filed them with CNA on or about December 11, 1973. In early January, 1974 CNA approved the change of beneficiary request and notified plaintiff's sister of that approval. By letter dated January 23, 1974, however, the company notified the sister that it refused payment of the disability claim on the ground that the policy had lapsed on July 1, 1973 due to non-payment of the premium. CNA mailed a check to plaintiff's sister on January 31, 1974 for the amount of the premium payment she had tendered on September 29, 1973. That refund check has not been cashed by plaintiff.
 
 
 7
 On these facts the district court found that "by accepting the premium tendered in September of 1973, and by thereafter treating the policy in force (by processing a change of beneficiary, with knowledge of plaintiff's disability claim), the defendants are estopped from denying that the policy was in effect during the period covered by the premium payment, namely, from July 1, 1973 to December 31, 1973." Schifalacqua v. CNA Insurance Co., No. 75-1266 at 2-3 (E.D.Pa. Dec. 7, 1976).
 
 
 8
 In this court, however, plaintiff explicitly declines to rely on any theory of estoppel. He instead asserts that CNA's actions constituted an express waiver of its right to declare the policy forfeit because of non-payment of the premium due July 1, 1973.
 
 
 9
 Plaintiff concededly failed to make the required premium payment before the expiration of the contractual period of grace. Such failure, under controlling Pennsylvania law, rendered the insurance contract forfeitable at the election of CNA. It is well-established that, under certain circumstances, an insurance company waives its right to elect forfeiture when it accepts a late premium payment. E. g., Lantz v. Vermont Life Insurance Co., 139 Pa. 546, 21 A. 80 (1891). It is also established in Pennsylvania law, however, that "the protecting power of the policy is suspended until the assessment is paid. No recovery can be had for a loss sustained during the continuance of such default." Lycoming Fire Insurance Co. v. Rought, 97 Pa. 415, 418 (1881). Where a premium payment is "received after the loss . . . the acceptance of it merely reinstate(s) the policy as of the date of its receipt." Cooper v. Belt Automobile Indemnity Association, 79 Pa.Super. 479, 482 (1922). Panizzi v. State Farm Mutual Automobile Insurance Co., 386 F.2d 600, 603-05 (3d Cir. 1967).
 
 
 10
 Plaintiff apparently argues that revival of the policy dates from the time of acceptance only in cases where the missed payment was not payable in advance, i. e., where it was an assessment for past insurance coverage. Plaintiff rests this distinction upon the presumed negative implication of Miller v. Elk County Mutual Fire Insurance Co., 323 Pa. 177, 186 A. 76 (1936). In Miller the court emphasized the debt-like nature of an assessment by a mutual insurance company in support of its holding that revival dates only from the time of acceptance. Because the premiums involved in this case were payable in advance, plaintiff distinguishes Miller and argues that it follows from such distinction that revival here must date back to the end of the period of grace.
 
 
 11
 It is true that the rule that revival dates only from the date of acceptance was first developed in cases involving assessments for past coverage by mutual insurance companies. Pennsylvania's courts, however, have held that the rule applies to all types of insurance contracts, including those where the premiums were payable in advance. For example, in Lantz v. Vermont Life Insurance Co., 139 Pa. 546, 21 A. 80 (1891), Pennsylvania recognized that this "principle is equally applicable to a case of life insurance" under which premiums were due in advance. Id. at 562, 21 A. at 83.
 
 
 12
 This we think sufficient to show that no recovery could have been had upon this policy had the assured died between the date of maturity of the premium and the promise of the agent to accept the premium . . . .
 
 
 13
 Id. See Cooper v. Belt Automobile Indemnity Association, 79 Pa.Super. 479 (1922) (automobile insurance; premiums payable in advance).
 
 
 14
 This rule that revival dates only from the date of acceptance is consistent with Pennsylvania's doctrine of implied waiver. When the plaintiff failed to pay the premium during the period of grace, CNA thereupon obtained the right to declare a forfeiture. To revive the policy, CNA had to waive that right. In the absence of an express agreement to do so, or of circumstances supporting estoppel, CNA's acceptance of the late payment must be characterized as an implied waiver in order to revive the policy.
 
 
 15
 In Pennsylvania, however, "the doctrine of implied waiver . . . applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show that he was misled and prejudiced thereby . . . ." Brown v. City of Pittsburgh, 409 Pa. 357, 360-61, 186 A.2d 399, 401 (1962) (emphasis in original) (citations and footnote omitted). Goodwin v. Hartford Life Insurance Co., 491 F.2d 332, 333 n.1 (3d Cir. 1974).
 
 
 16
 Acceptance of the late premium payment operates as an implied waiver because it is relied upon by the insured as evidence of the company's intention to continue his policy in force. The insured is prejudiced by that reliance in that he foregoes the opportunity to obtain other coverage. But such prejudicial reliance dates only from acceptance by the company. During the interval between lapse and the tender of late payment, the insured can in no way rely on the company's subsequent acceptance of his payment.
 
 
 17
 In Kittelberger v. Clearfield County Grange Mutual Fire Insurance Co., 106 Pa.Super. 333, 163 A. 367 (1932), the insured argued that the insurance company, because it had accepted the insured's late tender of premium, was estopped from denying liability for the loss. The loss occurred before the tender of late payment. The court recognized the principle that an insurance company could not accept late payment and then set up the prior default to defeat liability. But the court went on to say that
 
 
 18
 in all of the cases which have come to our notice, in which this principle has been applied, the assessment or premium was received by the company before the loss occurred, and the act of the company in receiving it led the insured to believe that he had protection under the policy. In the present case it cannot be said in truth that the acceptance of the assessment by the company had any such effect.
 
 
 19
 Id. at 341, 163 A. at 370.
 
 
 20
 Under Pennsylvania law, therefore, CNA's acceptance of the late payment implies a waiver of forfeiture from the date of that acceptance only. To find that the policy in issue was in effect at the time of the accident, it is necessary to find some further acts by CNA constituting waiver of forfeiture for the period of lapse as well.
 
 
 21
 On this record there is no such evidence. It is not logical to argue that plaintiff relied to his detriment during the period of lapse upon CNA's actions taken after the accident. Nor has plaintiff alleged any acts or omissions by CNA prior to the accident upon which he relied. CNA did nothing to induce plaintiff to believe that this policy was in force at the time of the accident. And even if CNA can be said to have later induced the belief that the policy had been revived, plaintiff's reliance on that belief in no way contributed to his failure to obtain coverage for the earlier accident. No implied waiver can therefore be found. And though plaintiff does not here argue an estoppel, it is clear that this same lack of prejudicial reliance would be fatal to that argument as well. See Blofsen v. Cutaiar, 460 Pa. 411, 333 A.2d 841 (1975).
 
 
 22
 Of course, CNA could expressly waive its right to be free from liability for loss during the lapse period. To establish such an express waiver there must be evidence of an explicit agreement by which CNA agrees to relinquish its rights. Astrich v. German-American Insurance Co., 131 F. 13, 20 (3d Cir. 1904); Dougherty v. Thomas, 313 Pa. 287, 297-98, 169 A. 219, 223 (1933). There is no evidence here of any express agreement by CNA to waive its rights.
 
 
 23
 Even assuming, therefore, that CNA's handling of plaintiff's late payments and its processing of the change of beneficiary form constituted waiver of forfeiture, that waiver could have revived the policy only as of the date of acceptance of the late payment. Since there is no evidence of express or implied waiver by CNA of its rights during the period of lapse, we reverse the judgment of the district court and remand the case with directions to enter judgment for the defendants.
 
 
 24
 The judgment of the district court is reversed and the case is remanded with directions to enter judgment for the defendants.