J-A12005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| INFINITY SELECT INSURANCE COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TARRIE FLEMING, IVY SHELBY PATE, STEVEN L. PATE AND DUAN WILLIAMS, | |
| Appellees | No. 2079 EDA 2015 |

Appeal from the Order Entered June 5, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 2177 February Term 2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:           **FILED OCTOBER 18, 2016**

Infinity Select Insurance Company (Infinity) appeals from the order entered June 5, 2015, denying in part its motion for summary judgment in this insurance coverage dispute.  We affirm.

The following facts are undisputed.  On July 16, 2003, Infinity issued a personal automobile insurance policy to Ms. Tarrie Fleming, effective from that date until January 16, 2014.  Thereafter, following notice, the policy was cancelled on October 4, 2013, at 12:01 a.m., for non-payment of premium.

_____

[*] Former Justice specially assigned to the Superior Court.

On October 4, 2013, at approximately 11:00 p.m., Ms. Fleming was operating her vehicle on Clarissa Street in Philadelphia. At that time, Ms. Fleming struck a pedestrian, Ms. Ceeanna Pate, allegedly resulting in Ms. Pate's death.

On October 5, 2013, at approximately 2:34 p.m., Ms. Fleming, or someone on her behalf, made an online premium payment. At that time, Ms. Fleming, or someone on her behalf, also indicated that she had not been involved in any accident since the policy cancellation, whereupon Infinity reinstated Ms. Fleming's policy without lapse.

In February 2014, Infinity commenced this action, seeking declaratory relief. Infinity pleaded that "[a]t the time of the collision with the decedent, [Ms.] Fleming's policy was lapsed due to non-payment of premium." **See** Amended Complaint, 08/01/2014, at ¶ 25.[1] Thus, according to Infinity, it owed no duty to defend or indemnify Ms. Fleming for any losses or injuries sustained as a result of the fatal accident. **Id.** at ¶ 26. No answer was filed to Infinity's complaint.

In April 2015, following discovery, Infinity filed a motion for summary judgment, citing two reasons: (1) "[b]ecause the policy was lapsed due to non-payment of the premium," and (2) "because the premium was not paid

---

[1] Infinity filed an amended complaint in order to identify the John Doe father of the deceased victim's children as Mr. Duan Williams. **See** Amended Complaint at ¶ 6.

until after accident occurred." **See** Infinity's Motion for Summary Judgment at ¶ 19. In May 2015, Ms. Ivy Shelby-Pate, the mother of the deceased victim, filed an answer in opposition to Infinity's motion. In her supporting brief, Ms. Shelby-Pate noted that Infinity had reinstated the policy without lapse and argued that Infinity was required to pay claims of innocent third parties, even where coverage was procured through fraud.

In June 2015, without supporting analysis, the trial court granted Infinity summary judgment in part, declaring that it had no duty to defend or indemnify Ms. Fleming except as to potential claims brought by Ms. Shelby-Pate or "presently unidentified," innocent third parties. Trial Court Order, 06/05/2015. Infinity filed a motion for reconsideration, which was denied, and it timely appealed. Thereafter, Infinity filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued an opinion.[2]

In its appeal, Infinity contends that the trial court erred, as a matter of law, when it determined that Infinity potentially owes benefits to innocent

_____

[2] The trial court's opinion was not responsive to Infinity's Pa.R.A.P. 1925(b) statement. Rather, the court opined that this appeal was interlocutory and should be quashed. **See** Trial Court Opinion, 06/23/2015, at 3-4. We disagree. We have jurisdiction to entertain this appeal pursuant to the Declaratory Judgments Act. **See Nat'l Cas. Co. v. Kinney**, 90 A.3d 747, 754-55 (Pa. Super. 2014) (citing **Nationwide Mut. Ins. Co. v. Wickett**, 763 A.2d 813 (Pa. 2000)); 42 Pa.C.S.A. § 7532. Further, the trial court's failure to provide substantive analysis supporting its decision has complicated our review. Nevertheless, we may affirm the trial court on any ground. **See, e.g.**, **Commonwealth v. Price**, 876 A.2d 988, 994 (Pa. Super. 2005).

third parties, because 1) Ms. Fleming's policy had been cancelled at the time of the accident and 2) Ms. Fleming, or someone on her behalf, fraudulently induced Infinity to reinstate her cancelled policy. **See** Infinity's Brief at 5.[3]

Our scope and standard of review are well settled:

> In analyzing the order of [a] trial court that granted summary judgment [], our scope of review is plenary. The standard of review is clear; we will reverse the order of the trial court only when the court committed an error of law or abused its discretion. Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

***Kvaerner Metals Div. Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 895-96 (Pa. 2006) (internal citations omitted) (***Kvaerner***).

According to Infinity, it properly cancelled Ms. Fleming's policy for nonpayment of premium. As Ms. Fleming's accident occurred after this cancellation, Infinity concludes no coverage is warranted. In support of this contention, Infinity cites ***Kelly v. Allstate Ins. Co.***, 138 F.Supp.2d 657 (E.D.Pa. 2001).

---

[3] We have restated the first two issues raised by Infinity for brevity. **See** Infinity's Brief at 5. A third issue concerns our jurisdiction to entertain this appeal. **Id.** We have addressed this issue, **supra**, at n.2.

In that case, an insured's automobile insurance policy was terminated for nonpayment of premium. **Kelly**, 138 F.Supp.2d at 658. The insurance provider reinstated the policy following payment. **Id.** However, upon reinstatement, the provider expressly advised the insured that she had suffered a lapse in her coverage. **Id.** During the lapse period, *i.e.*, between cancellation and reinstatement, the insured was involved in an automobile accident, in which she suffered personal injuries. **Id.** The insured filed a claim with her provider, who denied coverage. **Id.**

The insured filed suit in federal court. Applying Pennsylvania law, the district court noted that "an insurer may cancel a policy of automobile insurance for nonpayment of premium." **Id.** at 659 (citing 40 P.S. § 991.2004(1)). Following a default, "the protecting power of [a] policy is suspended until the full assessment is paid[,] and no recovery can be had for a loss sustained during the continuance of such default." **Id.** at 662 (citing **Lycoming Fire Ins. Co. v. Rought**, 97 Pa. 415, 418 (1881)). Further, "[w]here a premium payment is received after the loss, the acceptance of it merely reinstates the policy as of the date of its receipt." **Id.** (citing **Cooper v. Belt Auto. Indem. Ass'n**, 79 Pa. Super. 479, 482 (1922)). Based upon these principles, the district court denied the insured's allegations, granting summary judgment to the insurance provider. **Id.** at 663.

At first glance, this authority is persuasive. While "the Superior Court is not bound by federal court decisions," *Kelly* sets forth an accurate exposition of Pennsylvania law. *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. 2005) (citing *Werner v. Plater–Zyberk*, 799 A.2d 776, 782 (Pa. Super. 2002), *appeal denied*, 806 A.2d 862 (Pa. 2002)).

We deem *Kelly* to be inapposite, however, as it cannot account for Infinity's decision to reinstate Ms. Fleming's policy *without lapse*. *Compare* Infinity's Motion for Summary Judgment, 04/27/2015, at ¶¶12-15 (conceding that it did so), *with Kelly*, 138 F.Supp.2d at 658 (noting that provider specifically advised the insured of the lapse in her coverage). In our view, Infinity's decision to reinstate without lapse constitutes an express waiver of the default period, and thus, Ms. Fleming's original policy was in effect at the time of her accident. *See Cooper*, 79 Pa. Super. at 481-82 (concluding that, *absent waiver of the default period*, policy coverage recommences only upon payment of the overdue premium); *Schifalacqua v. CNA Ins.*, 567 F.2d 1255, 1258 (3d Cir. 1977) (suggesting that a provider "could expressly waive its right to be free from liability for loss during the lapse period," but that otherwise, "acceptance of the late payment implies a waiver of forfeiture from the date of that acceptance only").

Moreover, Infinity's concession is dispositive. Simply put, as Ms. Fleming's policy was in effect at the time of the accident, Infinity must

provide coverage to innocent third parties, as such coverage is defined in the policy. Infinity seeks to refute this conclusion in the second part of its argument. According to Infinity, its decision to reinstate Ms. Fleming's policy without lapse is "null and void," because Ms. Fleming fraudulently induced the reinstatement. **See** Infinity's Brief at 25. Infinity asserts that a provider may rescind a policy under these circumstances, citing in support **Equitable Life Assurance Soc'y of the U.S. v. Klein**, 173 A. 188 (Pa. 1934). For the following reasons, its argument is not persuasive.

Despite the contrary impression left by its argument to this Court, Infinity never alleged that Ms. Fleming engaged in fraud, but rather that she made a misrepresentation material to the risk of underwriting her policy. **Compare** Infinity's Brief at 14 ("[Ms.] Fleming fraudulently induced Infinity to reissue the [p]olicy."), **with** Infinity's Amended Complaint at ¶¶ 18-24 (characterizing the efforts of Ms. Fleming to secure coverage as a "material misrepresentation," but not alleging an intent to defraud) **and** Infinity's Motion for Summary Judgment at ¶¶ 13-16 (same).[4]

Allegations of fraud must be pleaded with particularity. **See, e.g.**, **Youndt v. First Nat'l Bank of Port Allegany**, 868 A.2d 539, 544-45 (Pa.

---

[4] To be clear, Infinity's first assertion of fraud appears in its motion for reconsideration. **See** Motion for Reconsideration, 06/16/2015, at ¶¶ 20-21. Thereafter in its Pa.R.A.P. 1915(b) statement, Infinity asserted that Ms. Fleming had fraudulently induced reinstatement of her policy. **See** Infinity's Pa.R.A.P. 1925(b) Statement, 07/17/2015, at ¶ 2.

Super. 2005) (setting forth the elements of fraud); Pa.R.C.P. 1019(b). Notably absent from Infinity's pleadings is any allegation demonstrating an intent to deceive, defraud, or otherwise act in bad faith. *See Youndt*, 868 A.2d at 545 (noting that the elements of fraud include "the intent of misleading another"); *see also, e.g.*, *Evans v. Penn Mut. Life Ins. Co. of Phila.*, 186 A. 133, 139 (Pa. 1936) ("[T]he controlling factor is the *good faith* of the insured, and the burden of showing fraud is on the insurer, who asserts it.") (emphasis added).

Under the common law, proof of either allegation, fraud or a material misrepresentation, would render a contract voidable. *DeJoseph v. Zambelli*, 139 A.2d 644, 647 (Pa. 1958). Nevertheless, it is well-settled that the common law no longer controls regarding a contract for automobile insurance. *See Erie Ins. Exch. v. Lake*, 671 A.2d 681, 683 (Pa. 1996) (*Erie*) (discussing the adoption of Act 78 and its remedial purposes, notably to "correct[] the imbalance in the relative bargaining positions of the insurer and the insured" and severely limit a provider's right to rescind a contract for automobile insurance).[5] Thus, we may not ignore Infinity's failure to

_____

[5] The automobile insurance act known as Act 78, 40 P.S. §§ 1008.1-1008.11, was enacted in 1968, repealed in 1998, and replaced by Act 68, 40 P.S. §§ 991.2001-991.2013 (1999). "Act 68 substantially reenacted Act 78 … and contains essentially the same restrictions on termination of automobile insurance policies." *State Farm Mut. Auto. Ins. Co. v. Commonwealth*, 124 A.3d 775, 777 (Pa. Cmwlth. 2015) (footnote omitted).
*(Footnote Continued Next Page)*

plead fraud. Accordingly, Infinity has not properly preserved this argument for our review, and we deem it waived. ***See*** Pa.R.A.P. 302; ***see generally N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.***, 564 A.2d 919, 926-929 (Pa. Super. 1989) (refusing to consider the appellant's allegations of fraud on appeal, where no such allegations were timely made before the trial court).[6]

Absent waiver, and assuming for the sake of Infinity's argument that it established fraud in this case, we briefly address its reliance on the Pennsylvania Supreme Court's decision in ***Klein***. In that case, the insured's life insurance policy lapsed for nonpayment of premium. ***Klein***, 173 A. at

*(Footnote Continued)* ───────────

Neither party to this appeal has expended any effort discussing the statutory provisions governing the termination of an automobile insurance policy. Based upon its pleadings, it appears that Infinity's right to terminate Ms. Fleming's policy is governed by 40 P.S. § 991.2004 (permitting cancellation – not rescission - of a policy where the insured has made a "misrepresentation … material to the acceptance of the risk by the insurer").

[6] We also question whether the trial court would entertain a motion for summary judgment brought to resolve an allegation of fraud. Absent an admission by a defendant, fraud is not a claim readily suitable for summary judgment. ***See, e.g.***, ***Grimes v. Prudential Ins. Co. of Am.***, 585 A.2d 29, 31 (Pa. Super. 1991) (reversing summary judgment because "[o]rdinarily, whether a misstatement of fact was made in bad faith is an issue of fact for the jury."). Here, Ms. Fleming effectively denied any intent to defraud Infinity, thus establishing an issue of fact. ***See*** Infinity's Motion for Summary Judgment at ¶ 17 (citing evidence from Ms. Fleming's deposition, in which she testified that she had asked her boyfriend to pay the overdue premium *before* her accident and that she did not inform her boyfriend of the accident until *after* he had already paid the premium).

- 9 -

188. Upon payment of the overdue premium and certification of the insured's continued good health, the provider reinstated the policy. *Id.* at 189. Thereafter, the provider learned, and facts adduced at trial established, that the insured had been ill and under the treatment of a physician. *Id.* The court's findings further established that the insured's certification was fraudulent. *Id.* Thus, the provider was permitted to rescind the policy. *Id.*

Infinity's reliance upon *Klein* is entirely misplaced. Initially, we observe that the Supreme Court's disposition in *Klein*, a life insurance dispute resolved on common law grounds, preceded the enactment of Act 78, designed to regulate the automobile insurance industry, by more than thirty years. Thus, for our present purposes, it is inapposite, and we afford it no precedential authority.

In contrast, the Court examined a more analogous issue, more recently, in *Erie*. In that case, following an accident resulting in multiple fatalities, the insurance provider discovered that the intoxicated driver had fraudulently secured the provider's coverage with the help of his girlfriend. *Erie*, 671 A.2d at 682. Thereafter, the provider filed a complaint for declaratory judgment seeking to void the policy. *Id.* The trial court granted the provider the relief requested, but this Court reversed as to all parties except the driver and his girlfriend. *Id.* at 683. Thus, the innocent victims were afforded coverage. *See id.*

Our Supreme Court accepted the case to examine whether Act 78 permitted the rescission of an automobile policy secured through fraud. *Id.* at 682. It concluded as follows:

We find, as a matter of common sense and public policy, that it would indeed be absurd to interpret Act 78 as permitting a person to financially benefit from his own illegal act of fraud. Therefore, an insurer may rescind a policy of insurance as to the actual perpetrator of the fraud, where the fraud could not reasonably have been discovered within the 60 day period immediately following issuance of the policy; limited to those instances where the undiscovered fraud was of such a nature that it is clear that an insurer would never have accepted the risk inherent in issuing the policy.

*Id.* at 373-74. Thus, the Court recognized a qualified right to rescind.

Nevertheless, the Court further qualified the right:

Automobile insurance is not issued solely for the benefit of the individual purchaser. Motorists carry insurance not only for their own protection, but also, for the benefit of third parties who may suffer through the negligence of the insured motorist. This concept of providing for the foreseeable consequences of driving in today's society is certainly one of the most important policy considerations prompting the remedial legislation in this area. … [Thus, innocent third party victims] should not be left to suffer. Although on the surface it appears harsh to force [an] insurance company to abide by a contract procured by fraud, it would be beyond harsh to preclude the third party [victims], who are innocent of trickery, and injured through no fault of their own, from receiving protection under the policy. Weighing all the factors, we are compelled to conclude that it is clearly the intent of the remedial legislation known as Act 78 to preclude recision [*sic*] of an insurance policy, as to third parties, beyond the 60 day grace period within the Act itself.

*Id.* at 374-75.

This precedent, absent Infinity's waiver of its fraud claim, would constrain our disposition here. Our Supreme Court has clearly held that the

remedial force of Act 78 (and its successor, Act 68), serves to insulate innocent victims who may suffer from the negligent acts of an insured motorist, even where coverage of that motorist has been procured by fraud. *Id.*

In summary, Infinity has conceded that it reinstated Ms. Fleming's policy without lapse, thus eliminating any default period. In our view, its concession is dispositive, and, therefore, Infinity must provide coverage to innocent third parties, as such coverage is defined in the policy. Infinity's argument that it was fraudulently induced to reinstate Ms. Fleming's policy is waived, as it never alleged fraud in its complaint or its motion for summary judgment. Nevertheless, absent waiver, and assuming Infinity could establish fraud, this case is controlled by our Supreme Court's decision in *Erie*, which would also require Infinity to provide coverage to innocent third parties. Accordingly, we affirm the order of court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016